THE VILLAGE OF SKOKIE, Plaintiff-Appellant, *v.* WALTON ON DEMPSTER, INC., Defendant-Appellee.

First District (1st Division)   No. 83—0111

Opinion filed November 7, 1983.

Harvey Schwartz, Corporation Counsel, of Skokie (Jeffrey D. Greenspan, Assistant Corporation Counsel, of counsel), for appellant.

McCarthy, Duffy, Neidhart and Snakard, of Chicago (John M. Duffy and Richard J. Witry, of counsel), for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:

The village of Skokie (plaintiff) brought this action against Walton on Dempster, Inc. (defendant), seeking injunctive relief for removal of a sign which allegedly does not conform to the sign ordinance promulgated by plaintiff. Defendant counterclaimed for declaratory judgment. The trial court held the ordinance was unconstitutional as applied to defendant. Plaintiff appeals.

Plaintiff's sign regulations, which were promulgated in 1973, limit the height of a pole sign such as plaintiff's to 24 feet. (Village Code of Skokie, Illinois (1980), art. 31.15.) In addition the ordinance limits the gross surface area to 200 square feet per face. (Village Code of Skokie, Illinois (1980), art. 31.161—5.) Finally, the regulations provide a schedule by which nonconforming signs shall be amortized, and eventually removed under a grace period of two to seven years varying with the original cost of the sign. Village Code of Skokie, Illinois (1980), art. 31.373—7.

Defendant operates an automobile dealership in Skokie. The subject sign was erected on steel poles in 1960. The sign is 46 feet 10 inches in height and 18 feet in width. The ordinance permits a height no more than 24 feet. The total gross surface area of the sign is 426 square feet. The ordinance permits an area not more than 200 square feet. Although the original cost of the sign was never established, the current cost of replacement with an identical sign would be $35,000. There is also evidence that the sign could be modified to substantial compliance with the ordinance for approximately $3,000. The cost of the sign has been completely amortized for tax purposes. Defendant was granted the maximum time of seven years to replace the sign as provided by the ordinance. As of the date of trial, defendant's sign was the only nonconforming sign in plaintiff village.

John Sagat, defendant's manager, testified the sign was an integral element of the company's advertising. The sign is directly in front of defendant's building. The sign has become in effect the corporate trade mark. Any alteration of the sign "could have adverse effect on our business." In addition the witness received an estimate of $29,500 for construction of a replacement sign in conformance with the ordinance. That cost would represent a hardship to defendant. On three or four occasions defendant requested that the board of plaintiff village grant relief from the ordinance. However, each request was denied by plaintiff.

Rolf Campbell, a city planning and zoning consultant, testified the sign is "fully compatible" with the surrounding area. In his opinion, the sign was not "in any way adverse or detrimental to the general

public health, safety, welfare, aesthetics or from any safety standpoint."

Real estate appraiser William A. McCann testified in agreement with Mr. Campbell. In the opinion of the witness the sign in question is not a detriment to surrounding property values or to the health, welfare, safety or aesthetic sense of the community. In addition, the witness testified that defendant's "is a unique location. This sign has to overcome visual obstructions that [do] not pertain to other locations." Therefore, the witness concluded that the existence of the sign "in no way impairs the use of other property within the vicinity, nor does it impair the value or quiet use and enjoyment."

On rebuttal, plaintiff's director of planning, Robert Molumby, testified the removal of the sign would not have any harmful effect on the surrounding community. The witness stated the consideration of aesthetics is an important consideration in the determination of the public welfare of a community. The witness believed permitting defendant to retain its sign intact would result in a detriment to the general enforcement of the ordinance and would grant defendant an unfair competitive advantage against other car dealerships in the village, which have complied with the ordinance.

Defendant directs our attention to the Skokie zoning ordinance which provides in pertinent parts (see Village Code of Skokie, Illinois (1980), arts. 9.2.6, 9.3.6, 9.4.6, 9.5.5, 9.6.6, 9.7.8):

> "The erection, construction, alteration and location of signs, other advertising structures, marquees and awnings shall be in conformity with the provisions of an ordinance known as the Sign Regulation Ordinance heretofore adopted by the Village of Skokie and as amended from time to time."

Defendant argues that this provision in effect incorporated the sign regulations into the zoning ordinance. Thus, the standards used to grant a zoning variance should be applied to the case at bar. (See Village Code of Skokie, Illinois (1980), art. 12.2.12; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) In our opinion such a standard of review is neither required nor appropriate in the case at bar.

Although sign regulations and zoning restrictions may affect some similar interests and involve "many of the same questions," (see *City of Champaign v. Kroger Co.* (1980), 88 Ill. App. 3d 498, 504, 410 N.E.2d 661, *appeal denied* (1981), 82 Ill. 2d 583), these restrictions are distinct in their scope and application. A zoning change generally affects the basic ability of a business to operate at a specified location. A sign regulation, on the other hand, merely restricts a method

of advertising. In addition, zoning regulations, by their very nature, vary in their operation according to location. The instant sign regulation is intended to apply uniformly to all citizens and all parts of plaintiff village. It may well be stated that defendant did not regard the zoning ordinance as applicable here. Defendant never sought relief from the zoning board of appeals. Instead, defendant directly attacked the constitutionality of the ordinance in the circuit court.

In *Metromedia, Inc. v. City of Des Plaines* (1975), 26 Ill. App. 3d 942, 326 N.E.2d 59, we dealt with the validity of a sign ordinance. We emphasized the difference between a zoning ordinance and a sign regulation:

> "As in the above case, the present issue concerns the constitutionality of a comprehensive provision enacted under the police power of the municipality. It is unlike a zoning law, the peculiar nature of which often warrants a determination of validity as applied to a particular piece of property. The provision in the present case is general in its terms, proscribing all off-premises advertising throughout the city's territorial limits. Hence the ordinance is either valid to all it embraces or invalid to all it embraces." 26 Ill. App. 3d 942, 944.

Defendant relies strongly upon *City of Champaign v. Kroger Co.* (1980), 88 Ill. App. 3d 498. There, the court dealt with the validity of an "Interim Sign Ordinance" applicable to store signs (88 Ill. App. 3d 498, 499). The court listed the six zoning factors outlined in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, but determined that the application of those criteria was "inconclusive rather than persuasive." (*City of Champaign v. Kroger Co.* (1980), 88 Ill. App. 3d 498, 503.) Actually the court in *City of Champaign* determined the validity of the ordinance at issue based on "how reasonably" the ordinance was related to "public health, safety, and welfare." (88 Ill. App. 3d 498, 504.) The court concluded that the sign ordinance was reasonably related to the legitimate governmental interest in community aesthetics, and upheld the ordinance. (88 Ill. App. 3d 498, 510.) In addition, this court recently adjudicated and upheld the validity of another municipal sign regulation without applying zoning standards. See *Krych v. Village of Burr Ridge* (1982), 111 Ill. App. 3d 461, 444 N.E.2d 229, *appeal denied* (1983), 94 Ill. 2d 553, and cases there cited.

In *Krych* the court went beyond the separation between zoning requirements and sign regulation. The court applied simply the test of reason to the validity of a sign regulation. These regulations were held "valid as long as they are reasonable." (*Krych v. Village of Burr*

*Ridge* (1982), 111 Ill. App. 3d 461, 465.) *Krych* and *Metromedia* make clear and definite the complete difference between a regulatory sign ordinance and the traditional zoning ordinance.

■■ Thus, we do not believe the determination of whether the instant sign regulations were incorporated into plaintiff's zoning ordinance is critical to our adjudication of the present controversy. In *City of Belleville v. Kesler* (1981), 101 Ill. App. 3d 710, 428 N.E.2d 617, we dealt with various sign restrictions specifically based upon and varying in accordance with different zoning classifications. (See 101 Ill. App. 3d 710, 712.) In reversing the decision of the trial court we held:

> "Further, it has been established that the role of aesthetics in zoning is an element of the public health, safety and welfare. [Citation.] Thus, a sign ordinance validly may regulate the size and location of a sign on the basis of enhancing the appearance of the community as well as protecting the public from injury due to the potentially hazardous location of a sign; consequently *** plaintiff's sign code is not an unconstitutional enactment on the grounds that it was not related to public welfare." 101 Ill. App. 3d 710, 714.

■■ In the case at bar we find the Skokie sign ordinance to be reasonable. We have found no reason to accept disparate enforcement of the restriction to defendant as compared to any other citizen of plaintiff municipality. See *Krych v. Village of Burr Ridge* (1982), 111 Ill. App. 3d 461; *City of Belleville v. Kesler* (1981), 101 Ill. App. 3d 710; *City of Champaign v. Kroger Co.* (1980), 88 Ill. App. 3d 498.

■■ Next, defendant argues the amortization schedule embodied in the subject ordinance is invalid because it is inflexible in its application. Defendant relies upon *Village of Oak Park v. Gordon* (1965), 32 Ill. 2d 295, 205 N.E.2d 464. There, the zoning ordinance permitted the property owner to amortize the loss of the beneficial use of his property over a specified period of time to terminate the nonconforming use. (32 Ill. 2d 295, 296.) The property was a rooming house and the ordinance would require reduction of the tenancy from four to two persons. The court concluded that the presumption of validity as to the reasonableness of the amortization schedule was overcome by the fact that the property owner had the right under zoning principles to continue an established nonconforming use in view of the absence of any contrary reason.

We find the amortization schedule embodied in plaintiff's sign ordinance to be reasonable both on its face and as applied to defendant. In *Village of Gurnee v. Miller* (1966), 69 Ill. App. 2d 248, 215 N.E.2d 829, *appeal denied* (1966), 34 Ill. 2d 629, we upheld the validity of an

amortization period of 36 months for discontinuance of a nonconforming use of property.

Amortization periods similar to the provisions here at issue have been upheld in other jurisdictions. For example in *Modjeska Sign Studios, Inc. v. Berle* (1977), 43 N.Y.2d 468, 402 N.Y.S.2d 359, 373 N.E.2d 255, *appeal dismissed* (1978), 439 U.S. 809, 58 L. Ed. 2d 101, 99 S. Ct. 66, the New York Court of Appeals upheld an ordinance which required the removal of all billboards within seven years. In *Metromedia, Inc. v. City of San Diego* (1980), 26 Cal. 3d 848, 610 P.2d 407, 164 Cal. Rptr. 510, *rev'd on other grounds* (1981), 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882, the California Supreme Court upheld an amortization schedule which required removal of billboards within one to four years based on the adjusted market value of the sign. (See 26 Cal. 3d 848, 881, 610 P.2d 407, 426, 164 Cal. Rptr. 510, 529.) The court stated "that a one-year amortization period was unreasonable except as to signs which had been fully depreciated for federal income tax purposes." 26 Cal. 3d 848, 883, 610 P.2d 407, 427, 164 Cal. Rptr. 510, 530.

In the case at bar, plaintiff's regulation extends the amortization period based on the value of the individual signs. Such a provision lessens the economic impact of the regulations on individual businesses and makes the application of the regulations more reasonable. Furthermore defendant was granted a full seven years to amortize the cost of its sign, and the sign was completely depreciated for Federal income tax purposes. At this point, virtually 10 years have elapsed since adoption of the ordinance in question. We simply do not see how defendant is in any different position than any other business in Skokie which has absorbed economic loss in complying with Skokie's sign ordinance.

■ In the instant case the burden of proof rests strongly upon defendant. The plaintiff has full legal right to regulate signs such as that maintained by the defendant. (Ill. Rev. Stat. 1981, ch. 24, par. 11—80—15.) Consequently the ordinance is presumptively valid as a constitutional exercise of plaintiff's authority. See *City of Champaign v. Kroger Co.* (1980), 88 Ill. App. 3d 498, 503.

The opinion evidence offered by defendant's experts falls far short of sustaining defendant's burden. The city planner and zoning consultant who testified for defendant conceded that he had assisted in preparation of the Cook County sign ordinance. This enactment requires conformity by a violating owner within 10 days after his receipt of notice from the county. The county ordinance is thus far more restrictive than the ordinance before us under which defendant had a grace

period of seven years within which to comply.

■ We conclude that the defendant has failed to overcome the presumption of validity upon which the ordinance rests. Defendant has not established that its economic hardship outweighs the aesthetic interests and requirements of the community as enunciated by its elected representatives. In our opinion, this record presents simply a reasonable aesthetic requirement well within the legal authority of the plaintiff village as evidenced by the pertinent cases (*e.g., City of Belleville v. Kesler* (1981), 101 Ill. App. 3d 710).

For these reasons the judgment appealed from is reversed and the cause is remanded with directions for the entry of a declaratory judgment requiring defendant to comply with the ordinance requirements within a reasonable time.

Reversed and remanded with directions.

BUCKLEY, P.J., and McGLOON, J., concur.