NATIONAL ADVERTISING COMPANY, a Delaware Corporation, Plaintiff-Appellant,

v.

The CITY OF ROLLING MEADOWS, an Illinois Municipality, Defendant-Appellee.

No. 85-1347.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1985.

Decided April 28, 1986.

Rehearing and Rehearing En Banc Denied May 22, 1986.

---

Sanford M. Stein, Gordon & Glickson, P.C., Chicago, Ill., for plaintiff-appellant.

Donald M. Rose, Donald M. Rose, Ltd., Rolling Meadows, Ill., for defendant-appellee.

Before POSNER, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

National Advertising Co. wants to build large signs in the City of Rolling Meadows. One sign would have a face 20 feet high and 60 feet long, and its support would add another 48 feet, making the top of the sign 68 feet above grade level. The other sign would be 14 by 48 and rest on 64-foot supports, for a total height of 78 feet. The vacant land on which National proposes to build the signs is zoned for manufacturing. National applied to the City for permits; the City said no, relying on an ordinance that limits the size of signs and prohibits all signs that advertise products not sold on the premises. The important portions of the ordinance provide:

9.1 Freestanding signs [are permitted in manufacturing districts], subject to the following conditions:

(a) One sign which pertains to business or businesses conducted within the building or buildings which are upon the zoning lot.

. . . .

(c) No sign shall exceed two hundred (200) square feet.

(d) No sign shall exceed twenty (20) feet in height above curb level.

(e) No sign shall be located nearer than twenty (20) feet of the property line of the property on which the sign is erected.

General rules applicable to all zones provide:

19.1 *Specific prohibitions.* The following signs are specifically prohibited by this ordinance:

(a) Off premise signs.

. . . .

(*l*) Any sign which advertises a business no longer conducted, or a product no longer sold, on the premises where such signs are located.

A definitional section states:

*Off-premise sign.* (This term also includes those signs commonly known as advertising signs, billboard, and posterboard). A sign which directs attention to a use, business, commodity, service, or activity not conducted, sold, or offered upon the premises where the sign is located.

█ The ordinance prohibits National's proposed signs for three reasons: National's signs are too tall (more than 20 feet), too large (more than 200 square feet of surface area), and not located on the premises of the businesses whose products they tout. National filed this suit under 42 U.S.C. § 1983, arguing that the ordinance violates the free speech clause of the first amendment (applicable to the states through the fourteenth) because it prohibits advertising, and political advertising in particular (political advertisers are less likely to have premises on which to erect signs). National also invoked the district court's pendent jurisdiction to argue that the ordinance is preempted by Illinois's Highway Advertising Control Act of 1971. The district court held that the local ordinance is consistent with the statute. The court's approval of the size restrictions led it to hold in a second opinion that National lacks standing to challenge the ban on off-premises signs. National's signs are too big, the court concluded, even if there is a constitutional right to erect off-premises billboards.

In light of *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the constitutional challenge to the ordinance is sufficiently colorable to support the pendent claim. See *Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–82, 39 L.Ed.2d 577 (1974). The problem is that National has preserved the pendent claim by the skin of its teeth, if it has preserved the claim at all. Count V of the complaint challenges the City's ordinance in all respects. But the ensuing presentations to the district court focused on the City's restriction on total height, leading the court to address that issue alone under state law. National relied on *Dolson Outdoor Advertising Co. v. City of Macomb,* 46 Ill.App.3d 116, 4 Ill.Dec. 692, 360 N.E.2d 805 (3d Dist.1977), a case discussing the interaction of the 1971 Act and local limitations on off-premises signs, only for a challenge to the height limitations. The City replied in kind. This led the district court to think that National's challenge to the ban on off-premises signs was based on the first amendment to the exclusion of state law. In this court National repeated the performance, and the City took its argument against the ban on off-premises signs as one of constitutional law.

There are glimmerings in National's papers in the district court, and its briefs here, of an objection to the off-premises rule based on the 1971 Act. For example, National insists that the City's entire ordinance is "preempted," and *therefore* that it has standing to raise the first amendment issue. (National did not recognize that if the ordinance is preempted, it does not need the first amendment to prevail.) National also cited *City of Macomb* repeatedly. But this was not enough to induce the City to address the statutory argument, and indeed until some time after the oral argument we struggled with this case on the assumption that National had to prevail under the first amendment or not at all. The glimmerings were there, however, and because a court should decide a case on nonconstitutional grounds whenever possible, *Jean v. Nelson,* — U.S. ——, 105 S.Ct. 2992, 2997–98, 86 L.Ed.2d 664 (1985);

*Frier v. City of Vandalia,* 770 F.2d 699, 701 (7th Cir.1985), we called for briefs on the statutory issue.

■ The court would be justified in holding National to its inadequate presentation and bypassing its claims under the 1971 Act. Litigants in civil cases are bound by their litigating strategies and mistakes, even if they lead to ruin. *United States v. Griffin,* 782 F.2d 1393, 1398–99 (7th Cir. 1986). One go-round is enough, and the plaintiff as master of its case is stuck with its choice of issues. It may not require its adversary to respond to—and the district court to decide—one set of issues only to say later on that it really wished to present a larger set of claims. The parties' incentive to focus their energies on a single, complete presentation likely to lead to a correct result would be diminished unacceptable if appellate courts allowed stray sentences and lackadaisical complaints to preserve issues for review. See *Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir.1984).

■ Yet this is a rule of prudence rather than jurisdiction, see *National Metalcrafters v. McNeil,* 784 F.2d 817, 825–26 (7th Cir.1986). Even those who stoutly resist the belated introduction of issues into civil cases, see *Citizens for John W. Moore Party v. Board of Election Commissioners,* 781 F.2d 581, 586 (7th Cir.1986) (dissenting opinion); *Tom v. Heckler,* 779 F.2d 1250, 1258–59 (7th Cir.1985) (dissenting opinion), believe that sometimes late is better than never. A party may not compel a court to decide a constitutional argument, especially one of some difficulty, by stipulation; still less may the party compel the court to reach the issue by unconsidered omission of a strong statutory argument. Disposition of this case on the basis of the 1971 Act would avoid a thicket. It would not bushwhack the City, which has now briefed the issue (and was put on constructive notice long ago by National's use of *City of Macomb* ). The issue is one of law; we do not lack any essential fact.

So we consider whether the City's ordinance is consistent with the 1971 Act.

National has the better of the argument on the state claim. Here are the pertinent portions of the state law:

§ 1. [Ill.Rev.Stat. ch. 121 § 501] ... The General Assembly ... finds and declares that outdoor advertising is a legitimate, commercial use of private property adjacent to roads and highways; that outdoor advertising is an integral part of the business and marketing function, and an established segment of the national economy which serves to promote and protect private investments in commerce and industry and should be allowed to operate in business areas; and that the regulatory standards set forth in Section 6 of this Act are consistent with customary use in this State and will properly and adequately carry out each and all of the purposes of this Act, more severe restrictions being inconsistent with customary use and ineffective to accomplish the purposes of this Act.

§ 6.01. [Ill.Rev.Stat. ch. 121 § 506.01] Size. No sign may be erected which exceeds 1,200 square feet in area, 30 feet in height and 60 feet in length, including border and trim, but excluding ornamental base or apron, supports and other structural members....

§ 7. [Ill.Rev.Stat. ch. 121 § 507] In zoned commercial and industrial areas, whenever a State, county or municipal zoning authority has adopted laws or ordinances, which include regulations with respect to the size, lighting and spacing of signs, which regulations are consistent with the intent of this Act and with customary use, then from and after the effective date of such regulations, and so long as they shall continue in effect, the provisions of Section 6 shall not apply to the erection of signs in such areas.

This statute was enacted to carry out the Highway Beautification Act of 1965, 23 U.S.C. § 131, which conditions federal highway grants on states' prohibiting most signs within 660 feet of major highways. Under § 131(c), states must prohibit most new off-premises signs near federally-supported highways and must begin to take down old ones. Section 131(d) creates an exception for land "zoned industrial or commercial", which must be governed by rules to be "determined by agreement between the several States and the Secretary [of Transportation]." The Highway Advertising Control Act of 1971 embodies Illinois's agreement with the Secretary, and it applies to all signs located within 660 feet of the necessary highways. The signs National has proposed to build would be within 660 feet of federally-aided highways.

The district court concluded that § 7 of the 1971 Act authorizes the City's ordinance. Section 7 authorizes local regulation of the "size" of signs and states that when such local laws are adopted "the provisions of Section 6 shall not apply to the erection of signs". National relies on the limiting language of § 7, which requires local rules to be "consistent with the intent of this Act and with customary use". "Customary use" also appears in § 1. According to § 1 "the regulatory standards set forth in Section 6 of this Act are consistent with customary use ..., more severe restrictions being inconsistent with customary use". If § 6 establishes the meaning of "customary use," then the City must incorporate § 6.01 into its ordinance, which would allow National to erect large signs. The district court rejected this argument, believing that it would drain § 7 of meaning. What could be the point of granting localities the power to displace § 6 if any displacement would be a forbidden alteration of "customary use"?

This is a false dichotomy. Section 6.01 regulates the permitted area of the sign "excluding ornamental base or apron, supports and other structural members." It is possible to say that "customary use" (and hence the rules of § 6.01 operating as local law) must govern the size of a sign's face, but that cities may regulate other aspects of the signs. They may, for example, regulate the supports of the signs, and thus the total height of the structure. They also may regulate the design of signs—say, by

requiring (or forbidding) signs to have a "colonial" appearance. And of course they may forbid signs altogether, or regulate signs as they please, in areas more than 660 feet from the highway or in places that are not zoned for industrial or commercial uses.

The 1971 Act reads like a careful compromise between groups opposed to billboards and groups that gain from billboards. Illinois wanted to limit billboards, or at least to keep receiving funds to build highways. But areas zoned for industrial and commercial uses are no longer places of pristine beauty, and § 1 of the statute ensures that advertisers may use these areas for billboards. The General Assembly declared that billboards are a "legitimate commercial use" of land near highways, and the state elected to "promote and protect" such uses. It then declared that "more severe restrictions" are "inconsistent with customary use". The most sensible reading of this statute is as compromise. Advertisers retained the right to erect billboards of a certain maximum size in industrial and commercial areas; localities got the right to restrict or ban signs in other places, and to regulate the total height and appearance of the permitted signs. The City tried to exceed the permitted scope of regulation by banning billboards from some permitted places and restricting their size in all places.

Only a few cases interpret the 1971 Act, but all of these are consistent with the interpretation we have given it. *Dolson Outdoor Advertising Co. v. City of Macomb*, 46 Ill.App.3d 116, 4 Ill.Dec. 692, 360 N.E.2d 805 (3d Dist.1977), is the most important. Macomb banned off-premises signs from industrial and commercial districts, just as Rolling Meadows has done. The Appellate Court traced the legislative history of the 1971 Act and concluded that § 1 forbids any ban of off-premises signs. "[O]ff-premise advertising is not only permitted, but specifically authorized by the Act and consequently we are unable to find any provision in the Act which authorizes non-home rule municipalities to prohibit off-premise advertising signs". 4 Ill.Dec. at 119, 360 N.E.2d at 808.

■ *City of Macomb* refers to non-home-rule municipalities. Rolling Meadows is a home-rule municipality. A home-rule municipality in Illinois may exercise power concurrently with the state but may not vary any state scheme establishing uniform law throughout the state. See Ill. Const. art. III § 6(i); *County of Cook v. John Sexton Contractors Co.*, 75 Ill.2d 494, 27 Ill.Dec. 489, 389 N.E.2d 553 (1979). When the state expressly establishes a coordinated plan, § 6(i) of the state constitution requires home-rule municipalities to go along. Cf. *Hutchcraft Van Services, Inc. v. City of Urbana Human Relations Com'n*, 104 Ill.App.3d 817, 60 Ill.Dec. 532, 433 N.E.2d 329 (4th Dist.1982) (state discrimination law is comprehensive, so a home rule jurisdiction may not have a separate ordinance). The 1971 Act calls for uniformity on the subjects mentioned in § 6, which implies that home-rule jurisdictions have no powers (beyond those granted by § 7) to regulate signs. At least one state court has held this, reasoning that because § 1 establishes uniform standards throughout Illinois, home-rule municipalities lack authority to ban off-premises signs. *Dolson Outdoor Advertising Co. v. Village of Rantoul*, No. 77–C–721 (Cir.Ct., 6th Jud.Cir., Champaign County, May 18, 1978), slip op. 8. Were it otherwise, the many home-rule municipalities in Illinois would prevent the state as a whole from carrying out the 1971 Act, which Illinois must to receive federal highway funds. Rolling Meadows has not offered us a reason to conclude that the state enacted a law ineffectual to carry out its obligations under the Highway Beautification Act. So much for the ban on off-premises signs.

■ The size limitations in the City's ordinance also fail because they are more restrictive than § 6 and so are not consistent with "customary use" within the meaning of § 1 and § 7. Both sides seek support for their position in *Ridge Outdoor Advertising Co. v. Village of Indian Head Park*, 129 Ill.App.3d 525, 84 Ill.Dec. 713, 472 N.E.2d 850 (1st Dist.1984), and an earlier unpublished decision in the same case, No. 82–2364 (Sept. 13, 1983). Indian Head

Park adopted an ordinance that banned all off-premises advertising and limited other signs to a total height of 40 feet. In the first (unpublished) decision, the Appellate Court, relying on *City of Macomb*, held the off-premises rule inconsistent with § 1 of the 1971 Act. It then concluded that because § 6.01 of the Act does not limit the overall height of a sign (including supports), the 40-foot rule is consistent with customary use and so valid. The second decision in *Ridge* addressed the village's method of measuring the height of the sign. The village selected as the base the level of the ground on which the sign stood. The Illinois tollway, the federal-aid highway that brought the mechanism into play, was elevated by 22 feet near the sign. The Appellate Court observed that the village's method would leave only 18 feet of the sign visible from the tollway. Yet § 6.01 of the 1971 Act says that a sign face of 30 feet tall is permissible. Because a municipality must "avoid more severe restrictions inconsistent with regulations set forth in the Act" (84 Ill.Dec. at 715, 472 N.E.2d at 852, citing § 1), the court held that "the height of the proposed sign must be measured from the tollway." 84 Ill.Dec. at 716, 472 N.E.2d at 853.

■ The opinions in *Ridge* collectively mean that a locality may restrict the *total* height of a sign and its support structures, but it may not restrict the size of the visible face of the sign to less than 1,200 square feet. This means that the surface area and height restrictions in § 9.1 of the City's ordinance are invalid under the 1971 Act. It also means, however, that the City is free to draft a new ordinance that would prohibit the signs National proposes to erect. The City could adopt the 40 foot rule sustained in *Ridge*, giving National 30 vertical feet of sign and 10 feet of support structure.

The City has not asked us to construe its ordinance in order to avoid invalidity under the 1971 Act. We might be able to do this in part, because the 1971 Act supplies some quantitative limits (such as the maximum surface area of 1,200 square feet). National's signs do not exceed this limit, however, so reading the criteria of the 1971 Act into

the ordinance would not do the job. The City wants to enforce a height limitation, and we cannot supply one from the 1971 Act. That statute does not address the height of the support structure. We know that the City's rules for total height are invalid, and although it could draft new rules—even rules that ban the particular signs National has proposed to build—it must supply these new rules for itself. It is not our function to draft a new ordinance for the City of Rolling Meadows. See *American Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 332–34 (7th Cir.1985), *aff'd mem.*, —— U.S. ——, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986). The district court therefore must give National effective relief from the existing ordinance. If the City enacts a new ordinance, National may either erect signs complying with the new rules or seek once again to litigate constitutional arguments. Regulation consistent with the 1971 Act would give National the authority to erect substantial billboards, which would change the constitutional analysis. Any new litigation also should permit the development of a factual record more complete than the one before us. See *Metromedia, supra*, 453 U.S. at 515 n. 20, 101 S.Ct. at 2896 n. 20 (plurality opinion).

REVERSED AND REMANDED.