DINGEMAN ADVERTISING, INC., Plaintiff-Appellee, v. THE VILLAGE OF MT. ZION, Defendant-Appellant.

Fourth District No. 4—86—0874

Opinion filed June 29, 1987.

Waaler & Evans, of Champaign (Jack Waaler, of counsel), for appellant.

Downing, Smith, Jorgensen & Uhl, of Decatur (James A. Uhl, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

Mt. Zion is an attractive village of approximately 4,600 people nestled in a valley area a few miles southeast of Decatur. The village is traversed by Illinois State Route 121, a Federal-aid primary highway, and adjoining this road in Mt. Zion are certain commercially zoned areas. Plaintiff, Dingeman Advertising, Inc. (Dingeman), obtained a lease in the commercial area along Route 121 and applied for a permit to erect an off-premises advertising sign which would consist

of a two-sided structure with each side containing 300 square feet. A village ordinance prohibited all signs larger than 150 square feet in area "regardless of zone, placement, size, or whether the sign is an on-premise or off-premise sign." Dingeman's application was denied. Dingeman sued, asking for a declaratory judgment.

On December 4, 1986, the circuit court of Macon County granted a motion for summary judgment in favor of Dingeman finding the zoning code and sign code ordinances of the village of Mt. Zion were invalid as they applied to Dingeman's application because they were in conflict with the Highway Advertising Control Act of 1971 (Ill. Rev. Stat. 1985, ch. 121, par. 501 *et seq.*). Mt. Zion appeals. We reverse.

The issue is simple; the answer is not. Does the Highway Advertising Control Act (the Act) preempt all municipal zoning controls and establish, as a minimum advertisement requirement for all commercial areas adjoining Federal-aid primary highways, the same maximum limitation set forth in the Act? The relevant sections of the Act for purposes of this appeal are sections 1, 4.04, 6, 6.01, 6.02, 6.03, and 7 (Ill. Rev. Stat. 1985, ch. 121, pars. 501, 504.04, 506, 506.01, 506.02, 506.03, 507). Section 1 provides as follows:

> "The General Assembly finds and declares that the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to Interstate highways and primary highways should be regulated in order to protect the public investment in such highways, to promote the recreational value of public travel, to preserve natural beauty and to promote the reasonable, orderly and effective display of such signs, displays and devices.

> The General Assembly further finds and declares that outdoor advertising is a legitimate, commercial use of private property adjacent to roads and highways; that outdoor advertising is an integral part of the business and marketing function, and an established segment of the national economy which serves to promote and protect private investments in commerce and industry and should be allowed to operate in business areas; and that the regulatory standards set forth in Section 6 of this Act are consistent with customary use in this State and will properly and adequately carry out each and all of the purposes of this Act, more severe restrictions being inconsistent with customary use and ineffective to accomplish the purposes of this Act." (Ill. Rev. Stat. 1985, ch. 121, par. 501.)

The section 6 series sets forth the maximum size, lighting, and spac-

ing of signs, setting forth limitations consistent with the requirements of the Highway Beautification Act of 1965 (23 U.S.C. sec. 131 (1982)).

Section 7 provides as follows:

"In zoned commercial and industrial areas, whenever a State, county or municipal zoning authority has adopted laws or ordinances, which include regulations with respect to the size, lighting and spacing of signs, which regulations are consistent with the intent of this Act and with customary use, then from and after the effective date of such regulations, and so long as they shall continue in effect, the provisions of Section 6 shall not apply to the erection of signs in such areas." (Ill. Rev. Stat. 1985, ch. 121, par. 507.)

Dingeman contends the second paragraph of section 1 has the effect of making the maximum of the section 6 series the minimum limitations available for zoning of commercial and industrial areas. Mt. Zion contends section 7 must be given effect allowing municipalities to make more restrictive provisions than those set forth in the section 6 series.

While funds from the Federal government were the basic reason for the Act, as is often the case, conflicting interests, those of the advertising sign industry and those of the various municipalities, influenced different provisions of the legislation. The result was conflicting provisions. Section 6 of the Act sets forth the maximum limitations which were necessary to avoid the loss of Federal highway funds. Section 7 of the Act would allow municipal zoning regulation of signs as long as such are "consistent with the intent of this Act and with customary use." Section 4.04 of the Act requires erected signs in business areas to comply with the "requirements of section 5 and 6 (subject to the provisions of section 7)."

Without the second paragraph of section 1 of the Act, it would be clear that municipalities could provide restrictions on size as long as they are within the maximum and not inconsistent with "customary use." If "customary use" is, in fact, the upper limits provided by section 6, then section 7 is a nullity, as is the provision in section 4.04 referring to section 7. In fact, the use of the term "customary use" in the legislation would be a nullity. A conflict definitely exists within the Act. If "customary use" must be construed to be the maximum limitations provided by section 6, then municipalities have no authority as to size, lighting, and spacing. If "customary use" is not so limited, the municipalities may have effective zoning control over size, lighting, and spacing. The trial court's decision gave the former interpretation to the Act in ruling against Mt. Zion. There are no Illinois

State court decisions on point.

In *Dolson Outdoor Advertising Co. v. City of Macomb* (1977), 46 Ill. App. 3d 116, 360 N.E.2d 805, the Third Appellate District held that Macomb could not prohibit off-premises advertising, relying on sections 1, 8 and 9 of the Act. The ordinance in *Dolson* did not provide for selective prohibition but rather provided a blanket prohibition of off-premises signs. The Federal court was confronted with a civil rights action against Rolling Meadows in *National Advertising Co. v. City of Rolling Meadows* (7th Cir. 1986), 789 F.2d 571, but held the Act preempted local regulation of both the size and prohibition of off-premises signs. The Federal court decision acknowledged the absence of adequate briefing of the preemption issue. We, in contrast, have had the benefit of careful analysis of the issue.

■ If possible, statutes should not be construed as containing superfluous provision. (*People v. Singleton* (1984), 103 Ill. 2d 339, 469 N.E.2d 200.) "It is fundamental, however, that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question." 2A A. Sutherland, Statutory Construction sec. 45.12 (4th ed. 1984).

The main purpose of the Act was to obtain Federal funds and that entailed maximum limitation on advertising signs. The protection for the advertising industry indicated by section 1 was an offshoot of the legislation. Section 7 was a protection for municipalities desiring additional limitations.

Dingeman agrees that if we adopt its position signs with 1,200 square feet on each side could theoretically be constructed every 100 feet in the commercially zoned area of Mt. Zion that borders State Route 121. We recognize economics and the possible public uproar would provide further protection against such obnoxious construction. However, no municipality traversed by a primary highway could provide advertising regulations consistent with aesthetics planning in commercial or industrial areas bordering the primary State highways.

■ Aesthetics and safety goals have been held to be valid policy reasons for governmental regulation of outdoor signs. (*Metromedia, Inc. v. City of San Diego* (1981), 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882; *Village of Skokie v. Walton on Dempster, Inc.* (1983), 119 Ill. App. 3d 299, 456 N.E.2d 293.) The *Skokie* case upheld an order limiting maximum size of signs to 200 square feet, the preemption issue not being involved.

The sections of the statute are in conflict. The primary purpose of the Act was to comply with the requirements of the Highway Beauti-

fication Act of 1965 (23 U.S.C. sec. 131 (1982) (the Lady Bird Bill)) and preserve Federal funding for Illinois highways. The advertising interests were added, as were interests of municipalities. There is no specific legislative determination of which conflicting interest should prevail.

■ Dingeman's position would result in an absurd and unjust result. If signs in municipal areas could only be limited to the maximum limitation of the Act, the purpose of the Act "to preserve natural beauty and to promote the reasonable, orderly and effective display of such signs, displays and devices" would be frustrated. We hold that, insofar as section 1 and section 7 conflict, section 7 controls and uphold Mt. Zion's right to regulate the size, lighting, and spacing of advertising signs consistent with customary use.

Reversed and remanded.

McCULLOUGH and KNECHT, JJ., concur.