WHITECO METROCOM DIVISION, Plaintiff-Appellant, v. THE VILLAGE
OF DOWNERS GROVE, Defendant-Appellee.

Second District No. 2—89—0612

Opinion filed April 24, 1990.

Douglas R. Prochnow, Lawrence D. Mishkin, and E. Regan Daniels, all of Wildman, Harrold, Allen & Dixon, of Chicago (James R. Morrin, of counsel), for appellant.

Rosenthal, Murphey, Coblentz & Janega, of Chicago, and Barbara J. Gosselar, of Kubiesa & Power, Ltd., of Westmont (Jon B. Murphey, of counsel), for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Whiteco Metrocom Division (Whiteco), seeks reversal of a judgment on the pleadings entered by the circuit court of Du Page County in its two-count complaint for declaratory judgment against the defendant, the Village of Downers Grove. On leased property at 1023 Butterfield Road in Downers Grove, Whiteco, which was engaged in the business of outdoor advertising, proposed to erect two double-faced outdoor advertising display signs, each to be located within 660 feet of U.S. Interstate 88 (I-88). Each of the sign faces was to be 60 feet wide and 20 feet high and have a total display area of 1,200 square feet. The bottom of the sign was to be 60 feet above grade, and the sign would be oriented so that it was viewable by eastbound and westbound vehicles on I-88.

As proposed, the signs complied with certain relevant provisions of the Highway Advertising Control Act of 1971 (the Act) (Ill. Rev. Stat. 1987, ch. 121, pars. 504, 504.04, 506, 506.01). In particular, section 6.01 of the Act provides in pertinent part: "No sign may be erected which exceeds 1200 square feet in area, 30 feet in height and 60 feet in length." The Illinois Department of Transportation, the State agency charged with the administration of the Act, granted permits for the signs, but the Village of Downers Grove, a home rule unit, advised Whiteco that it would deny any application for signs which exceeded the sign face size and height limitations contained in article IX, section 5.3—1(c) of its zoning ordinance. Section 5.3—1(c) regulates signs in the B—3 zoning district in Downers Grove; the property on which the proposed signs were to be erected is located in a B—3 zoning district. *Inter alia,* "[a]dvertising signs not exceeding 20 feet in height and 200 square feet in area" are permitted in the Downers Grove B—3 zoning district. Downers Grove, Ill., Zoning Ordinance art. IX, §5.3—1(c).

At issue is whether the advertising sign size limitation imposed by the Downers Grove zoning ordinance is an invalid preemption of the maximum sign size permitted under the Act.

Whiteco acknowledges that in zoned commercial and industrial areas municipalities are permitted under section 7 of the Act to adopt regulations with respect to the size of signs other than as set forth in section 6.01 of the Act if such regulations are "consistent with the intent of [the] Act and with customary use." (Ill. Rev. Stat. 1987, ch. 121, par. 507.) "Customary use," Whiteco contends, refers to the customary use of advertising signs in the State of Illinois by the outdoor advertising industry in its exercise of the rights established by the Act and does not refer, as Downers Grove contends, to "the customary use of land based on its designation, restrictions on usage, and surrounding uses in a particular community as delineated and described in a local municipal zoning ordinance."

Whiteco relies on the language of section 1 of the Act and the legislative histories of the Act and of the Federal Highway Beautification Act of 1965 (23 U.S.C. §131 *et seq.* (1970)) in support of its interpretation of the term "customary use." It concludes on the basis of those authorities that Downers Grove's restriction of the size of signs in the B—3 zoning district to 20 feet in height and 200 square feet in area is not consistent with "customary use" since regulatory standards consistent with such "customary use" are specified in section 1 as those "set forth in section 6 of [the] Act." (Ill. Rev. Stat. 1987, ch. 121, par. 501.) Thus, Whiteco argues, Downers Grove's more severe sign size restriction is inconsistent with "customary use."

The Illinois Highway Advertising Control Act of 1971 was adopted by the Illinois legislature pursuant to the Federal Highway Beautification Act of 1965. (23 U.S.C. §131 *et seq.* (1970).) In order for States to preserve Federal funding for State highways, the Highway Beautification Act required them to enact legislation regulating outdoor advertising signs. The Illinois Highway Advertising Control Act, in part, regulates the size, lighting and spacing of outdoor advertising signs. Ill. Rev. Stat. 1987, ch. 121, pars. 506, 506.01, 506.02, 506.03.

Section 1 of the Act provides in full as follows:

"The General Assembly finds and declares that the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to Interstate highways and primary highways should be regulated in order to protect the public investment in such highways, to promote the recreational value of public travel, to preserve natural beauty and to promote the reasonable, orderly and effective display of such signs, displays and devices.

The General Assembly further finds and declares that out-

door advertising is a legitimate, commercial use of private property adjacent to roads and highways; that outdoor advertising is an integral part of the business and marketing function, and an established segment of the national economy which serves to promote and protect private investments in commerce and industry and should be allowed to operate in business areas; *and that the regulatory standards set forth in Section 6 of this Act are consistent with customary use in this State and will properly and adequately carry out each and all of the purposes of this Act, more severe restrictions being inconsistent with customary use and ineffective to accomplish the purposes of this Act.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 121, par. 501.

Section 7 of the Act provides, however, that:

"In zoned commercial and industrial areas, whenever a State, county or municipal zoning authority has adopted laws or ordinances, which include regulations with respect to the size, lighting and spacing of signs, *which regulations are consistent with the intent of this Act and with customary use,* then from and after the effective date of such regulations, and so long as they shall continue in effect, *the provisions of Section 6 shall not apply to the erection of signs in such areas.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 121, par. 507.

Several cases have addressed the seeming inconsistency of municipal zoning regulations permitting less generous square footage of advertising signs pursuant to the provisions of section 7 of the Act in light of the language of section 1 of the Act that "more severe restrictions" than section 6 regulatory standards are "inconsistent with customary use." (*National Advertising Co. v. City of Rolling Meadows* (7th Cir. 1986), 789 F.2d 571, 575; *Dingeman Advertising, Inc. v. Village of Mt. Zion* (1987), 157 Ill. App. 3d 461; *National Advertising Co. v. Village of Downers Grove* (1988), 166 Ill. App. 3d 58.) Sections 1 and 7 of the Act have variously been described as having been born of either the compromise (*Rolling Meadows*, 789 F. 2d 571, 575) or conflict (*Dingeman*, 157 Ill. App. 3d 461; *Downers Grove*, 166 Ill. App. 3d 58) between the State—concerned with preserving its Federal highway funds; the advertising industry—concerned with effective highway advertising; and local zoning entities—concerned with highway aesthetics and safety. (*Rolling Meadows*, 789 F.2d at 576; *Dingeman*, 157 Ill. App. 3d at 464-65; *Downers Grove*, 166 Ill. App. 3d at 62.) As stated in *Dingeman*,

"The main purpose of the Act was to obtain Federal funds

and that entailed maximum limitation on advertising signs. The protection for the advertising industry indicated by section 1 was an offshoot of the legislation. Section 7 was a protection for municipalities desiring additional limitations." *Dingeman*, 157 Ill. App. 3d at 464.

In *National Advertising Co. v. City of Rolling Meadows*, the court of appeals invalidated section 9.1 of Rolling Meadows' zoning ordinance limiting the size of signs to 200 square feet inasmuch as it was "more restrictive than [section 6.01 of the Act] and so *** not consistent with 'customary use' within the meaning of [sections 1 and 7]." (*Rolling Meadows*, 789 F.2d at 576.) The court there was of the opinion that Rolling Meadows, as a home rule municipality, may restrict the total height of a sign and its support structures since section 6 of the Act does not specify those matters, but that it could not restrict the size of the visible face of the sign to less than 1,200 square feet since section 6 of the Act does regulate square footage. The court observed that, "[w]hen the state expressly establishes a co-ordinated plan, §6(i) of the state constitution requires home-rule municipalities to go along." (789 F.2d at 576; Ill. Const. 1970, art. VII, §6(i).) In other words, the court found the more restrictive Rolling Meadows sign size regulation was "preempted" by section I of the Act, which stated that the sign size which was "consistent with customary use in this State" was the regulatory standard set forth in section 6 of the Act, *i.e.*, 1,200 square feet.

The preemption found in *National Advertising Co. v. City of Rolling Meadows* was rejected after careful analysis in *Dingeman Advertising, Inc. v. Village of Mt. Zion*, however, and *Dingeman's* lead was followed in this court's subsequent decision in *National Advertising Co. v. Village of Downers Grove*. (*Dingeman*, 157 Ill. App. 3d 461; *Downers Grove*, 166 Ill. App. 3d 58.) At issue in *Dingeman* was the validity of Mt. Zion's zoning ordinance prohibiting all signs larger than 150 square feet in area. The plaintiff, Dingeman Advertising, Inc., sought approval of a two-sided, off-premises advertising sign, each side of which measured 300 square feet. Mt. Zion denied Dingeman's application, and in Dingeman's subsequent suit for declaratory judgment, the trial court found Mt. Zion's ordinance invalid as being in conflict with the Act.

The precise issue considered on appeal in *Dingeman* was: "Does the Highway Advertising Control Act (the Act) preempt all municipal zoning controls and establish, as a *minimum* advertisement requirement for all commercial areas adjoining Federal-aid primary highways, the same *maximum* limitation set forth in the Act?" (Emphasis

added.) (*Dingeman*, 157 Ill. App. 3d at 462.) Dingeman argued the second paragraph of section 1 of the Act had the effect of making the *maximum* limitations of the section 6 series the *minimum* limitations available to municipalities for commercial and industrial-zoned areas. Mt. Zion contended section 7 of the Act has effect only if municipalities are allowed to make more restrictive provisions than those set forth in the section 6 series.

Dingeman's contention was rejected, and the trial court's finding of invalidity of the Mt. Zion sign size limitation ordinance was reversed. The court observed that, "[i]f 'customary use' is, in fact, the upper limits provided by section 6, then section 7 is a nullity." (*Dingeman*, 157 Ill. App. 3d at 463.) Recognizing that statutes should not be construed, if possible, as containing a superfluous provision, the court concluded that insofar as sections 1 and 7 conflicted, section 7 controls, and it upheld Mt. Zion's right to regulate the size, lighting, and spacing of advertising signs "consistent with customary use." *Dingeman*, 157 Ill. App. 3d at 465.

This court agreed with the reasoning and conclusion of *Dingeman* in *National Advertising Co. v. Village of Downers Grove*, which concerned the same section of the Downers Grove zoning ordinance which is at issue here, section 5.3—1(c) of article IX. The trial court found in each of the consolidated cases before it that the Act preempted local regulations which were inconsistent with it.

On appeal before this court, there was no dispute between the parties that the Village's sign ordinance imposed substantially stricter limitations on the size and location of outdoor advertising signs than those imposed by the Illinois General Assembly under section 6 of the Act. Adhering to the reasoning and conclusion of *Dingeman* in affording control to section 7 over section 1 of the Act, this court also observed that the enactment of more restrictive local advertising sign regulations by a municipality would not jeopardize the continued receipt of Federal highway funds which was the legislature's impetus in adopting the Act. 166 Ill. App. 3d at 61-62.

Whiteco contends, however, that neither *Dingeman* nor *National Advertising Co. v. Village of Downers Grove* recognized a right in municipalities to regulate State highway advertising sign standards using a purely local standard of customary use of land based on its designation as contended by Downers Grove. Rather, municipalities may only regulate sign sizes subject to the Act's imposed standard of "customary use" which, Whiteco argues, refers to the statewide sign industry usage declared in section 1 of the Act, which, in turn, refers to the section 6 sign area size of 1,200 square feet. Whiteco contends

the trial court's judgment in the instant cause deprived the sign industry of the legitimate rights and considerations which the Act intended to preserve for it in Illinois and deprived it of any meaningful remedy to enforce those rights by rendering superfluous the "customary use" language in sections 1 and 7 of the Act.

 The trial court's judgment has not deprived the sign industry of any legitimate rights and considerations provided by the Act. The construction of a statute is a question of law (*In re Estate of Pirie* (1986), 141 Ill. App. 3d 750), and the statute may be construed by this court independently of the trial court's judgment (*People ex rel. Edgar v. Curley* (1989), 188 Ill. App. 3d 37). A court's function in interpreting statutory provisions is to ascertain and give effect to the legislative intent underlying the statute. The court must look at the statute as a whole, taking into consideration its nature, its purposes and the evil the statute was intended to remedy. (*Rodgers v. Department of Employment Security* (1989), 186 Ill. App. 3d 194, 198.) Each word, clause, or sentence of a statute must not be rendered superfluous but must, if possible, be given some reasonable meaning. (*Peoria Roofing & Sheet Metal Co. v. Industrial Comm'n* (1989), 181 Ill. App. 3d 616.) Absent contrary legislative intent, the same, or substantially the same, words appearing in different parts of the same statute will be given consistent interpretation. (*People v. Yarbrough* (1988), 166 Ill. App. 3d 782.) Where intent can be ascertained from the statutory language itself, it must be given effect without resorting to extrinsic aids for construction. *People v. Bryant* (1989), 128 Ill. 2d 448.

Notwithstanding Whiteco's thorough, hard-pressed argument setting forth the State and Federal legislative histories of the Act and the Highway Beautification Act in support of its position that "customary use" in section 7 refers to statewide sign industry usage and not local land use, we believe resort to extrinsic aids in interpretation of the Act is unnecessary. Accepting, for purposes of discussion, that the term "customary use" in section 7 should be afforded a meaning consistent with the term "customary use in this state" as used in section 1, section 7 nonetheless permits zoning authorities to preempt the provisions of the section 6 series (regulating sign size, lighting, and spacing) in zoned commercial and industrial areas if such preemptive regulations "are consistent with the intent of [the] Act and with customary use." (Ill. Rev. Stat. 1987, ch. 121, par. 507.) Again, assuming "customary use" to mean "customary use in this state" as provided in section 1 of the Act and as urged by Whiteco, section 1 declares that: "[T]he regulatory standards set forth in section 6 ***

*are consistent with customary use in this state* and will properly and adequately carry out each and all of the purposes of this Act, more severe restrictions being inconsistent with customary use and ineffective to accomplish the purposes of this Act." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 121, par. 501.

The regulatory standard for sign size established by section 6 of the Act which, by virtue of section 1, is expressly declared to be consistent with customary use in this State, is a *maximum* of 1,200 square feet in area. Section 6 clearly permits the erection of signs *less than* 1,200 square feet in area. Consequently, if signs *not exceeding* 1,200 square feet in area *are consistent* with customary use as declared in section 1, then the only sign size regulation which would be *inconsistent* with customary use would be one that allows erection of a sign with an area of *more than* 1,200 square feet.

■ The only way to achieve consistency between the apparent blanket prohibition of section 1 against "more severe restrictions" and the preemptive capabilities granted zoning authorities in section 7 is to construe section 1 as a declaration that "more severe restrictions [on a statewide basis would be] inconsistent with customary use and ineffective to accomplish the purposes of this Act." Construed thusly, the statute assures that outdoor advertising signs in business areas adjacent to interstate highways and primary highways in the State of Illinois shall be allowed and *may be* as large in area as 1,200 square feet *except* insofar as they may be located in zoned business and industrial areas and are otherwise regulated *not in excess of the maximum size limitation of 1,200 square feet.*

Whiteco asserts that the court's finding of validity of the Downers Grove zoning ordinance preempting the 1,200 square foot maximum sign size set forth in the Act "deprives the sign industry of any meaningful remedy to enforce the rights recognized in sections 1 and 7 of the Act" in that municipal sign ordinances would "need only pass constitutional muster under traditional zoning law" (*i.e., La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40). That zoning law test, it argues, would not include a consideration of statewide customary sign industry usage and practices. The Village argues in response that Whiteco's fear that customary sign industry usage on a statewide basis could not be considered under *La Salle* is incorrect and cites *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, as an example of a case where the regional and statewide need for landfills was considered in reviewing the denial of a landfill zoning request.

In section I(D) of its reply brief, Whiteco takes exception to

Downers Grove's position on this issue and its supporting authority, arguing that it amounts to a withholding from this court of Downers Grove's "true position" on the test applicable to sign regulation ordinances. In support of its argument in this regard, it points to a trial court brief which Downers Grove filed in *National Advertising Co. v. Village of Downers Grove*, case No. 88—MR—527. Whiteco characterizes Downers Grove's true position to be that "absent the Act, local communities are *not* required to recognize sign industry usage in any respect" since it is the *reasonableness* of sign regulation ordinances which is the proper test of validity and not the test used in *La Salle*. Whiteco's reply brief then appends as exhibit "T" a copy of Downers Grove's so-called brief which, in actuality, was Downers Grove's reply memorandum in support of its motion for summary judgment in that cause.

In a motion taken with this case, Downers Grove moves to strike Whiteco's reply brief, and Whiteco has filed its objections thereto. Downers Grove argues Whiteco's reply brief should be stricken in that it does not limit itself to matters of reply, injects entirely new matter into the case and improperly attempts to supplement the record without leave of court, all in violation of Supreme Court Rule 341. (113 Ill. 2d R. 341(g).) Whiteco counters that its section I(D) argument and appendix T are properly responsive to arguments made by Downers Grove in its answer brief and are not violative of Supreme Court Rule 341. Alternatively, it argues that striking only that portion of the reply brief and appendix which is deemed to be improper rather than its entire brief would adequately protect Downers Grove's interests without greatly prejudicing Whiteco.

■■ ■ Downers Grove's answer brief in the instant cause appears to suggest that the traditional zoning test used in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, would allow consideration of statewide industry practice in analyzing the validity of the sign ordinance. The inherent implication that the *La Salle* test *is* the one which would be used to test the validity of a sign ordinance is not well taken, but we do not believe Downers Grove's argument in answer to Whiteco's contention can be construed to be an intentional misrepresentation of the law or Downers Grove's position to this court. It has been pointed out that the factors to be considered under the traditional *La Salle* zoning test focus only on the validity of a zoning classification as applied to a particular piece of property. In contrast, a sign regulation ordinance is applicable to all signs within a zoning district thus distinguishing it in its scope and application. Therefore, it is tested strictly on the basis of whether it is reasonable,

that is, whether it is rationally related to the public health, safety or welfare. *Village of Skokie v. Walton on Dempster, Inc.* (1983), 119 Ill. App. 3d 299, 302-03; see also *Krych v. Village of Burr Ridge* (1982), 111 Ill. App. 3d 461, 464-66; *City of Champaign v. Kroger Co.* (1980), 88 Ill. App. 3d 498, 503-10.

In countering Downers Grove's suggestion that statewide sign industry usage could be considered even under the *La Salle* test, Whiteco is forced in its reply brief to acknowledge that *La Salle* is not the proper test, but, rather, that the reasonableness test applies. Whiteco doggedly adheres to its "lack of remedy" argument, however, by weakly concluding that none of the reasonableness cases arose under the Act and, thus, absent the protection afforded the sign industry by the Act, "the only test for a sign ordinance is 'reasonableness,' nothing more." As Downers Grove points out, Whiteco has not contended in this cause that its maximum sign size *is* unreasonable, nor, in fact, does Whiteco argue here that the reasonableness test *could not* include consideration of statewide sign industry advertising practices. Its lack-of-remedy argument seriously deflated, Whiteco proceeds to attack Downers Grove, charging it has concealed its "true position" discussed above.

■ That portion of section I(D) of Whiteco's reply brief which unfairly charges Downers Grove with misrepresenting its true position to this court is stricken. Although appendix T ordinarily also should be stricken as concerning a matter *de hors* the record, Downers Grove's motion to strike relies itself on appendix T in arguing the reply brief should be stricken, thus rendering its presence in the record essential to this court's determination of the motion. Accordingly, it would be inappropriate to strike it in this instance.

■ ■ It is well established that a motion for judgment on the pleadings admits the facts well pleaded by the opposite party and seeks judgment on the questions of law raised by the pleadings. (*Vermeil v. Jefferson Trust & Savings Bank* (1988), 176 Ill. App. 3d 556, 563.) Judgment on the pleadings is appropriate only if the pleadings do not raise genuine issues of material fact. (*Allcare, Inc. v. Bork* (1988), 176 Ill. App. 3d 993, 999.) The grant or denial of declaratory relief is discretionary with the court (Ill. Rev. Stat. 1987, ch. 110, par. 2—701; *Clyde Savings & Loan Association v. May Department Stores* (1981), 100 Ill. App. 3d 189); the trial court's exercise of this discretion is not afforded the same deference as its exercise of discretion in other contexts which may require factual determinations such as the credibility of the witnesses (*Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1981), 99 Ill. App. 3d 433, 436). When no

question of fact is presented, entry of judgment on the pleadings in a declaratory judgment action is proper. *Lane v. Bauscher* (1978), 59 Ill. App. 3d 621; *Commercial Mortgage & Finance Co. v. City of Rockford* (1965), 62 Ill. App. 2d 160.

■ For the reasons above, we conclude the court did not err in granting Downers Grove's motion for judgment on the pleadings where the only question presented was one of law and that the plaintiff was not entitled to judgment based upon the plaintiff's allegation that customary usage, as an industry standard, preempts and invalidates Downers Grove's zoning ordinance because the ordinance is inconsistent with customary usage and is *ipso facto* invalid.

The judgment of the circuit court of Du Page County is affirmed. Downers Grove's motion to strike Whiteco's reply brief is granted in part.

Motion to strike granted in part; judgment affirmed.

DUNN and McLAREN, JJ., concur.