T&S SIGNS, INC., Plaintiff-Appellant, v. THE VILLAGE OF WADSWORTH, Defendant-Appellee.

Second District No. 2—93—0638

Opinion filed May 10, 1994.

Carl N. Isermann, of Diamond, LeSueur & Roth, Associates, of McHenry (David C. LeSueur, of counsel), for appellant.

John M. Mullen, of Libertyville, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, T&S Signs, Inc., filed an action for declaratory, injunctive, and *mandamus* relief, and damages on the theory of inverse condemnation (see 225 ILCS 440/9 (West 1992)), when the defendant, the Village of Wadsworth (Village), interfered with the plaintiff's efforts to erect an advertising sign for which the plaintiff obtained a permit issued by the State of Illinois (see 225 ILCS 440/8

(West 1992)). The trial court granted the defendant's motion to dismiss, and the plaintiff appealed. The issue on appeal is whether the Village, a non-home-rule municipality, may enact more stringent regulations in the area of outdoor advertising than those provided by the Illinois Highway Advertising Control Act of 1971 (Act) (225 ILCS 440/1 et seq. (West 1992)). For the following reasons, we affirm.

The plaintiff is an Illinois corporation engaged in the business of erecting and maintaining advertising signs. The plaintiff owns a parcel of land in the Village of Wadsworth which is located west of Route 41 and adjacent to Interstate 94. The property is zoned for business purposes.

On May 21, 1992, the State of Illinois Department of Transportation (DOT) issued an outdoor advertising permit which authorized the plaintiff to erect and maintain an off-premises, illuminated, outdoor advertising sign on the subject property. The sign was proposed to be 1,200 square feet; 60 feet high and 20 feet wide. It would be located 150 feet south of the centerline of Edwards Road and 1,000 feet west of the southeast corner of Edwards Road and Mill Creek Road, adjacent to Interstate 94.

The Village refused to issue the plaintiff a permit to erect the sign because the proposed sign violated a Village zoning ordinance. The ordinance precludes off-premises advertising, illumination of signs, and limits the size of a sign in this zoning district and location to 150 square feet and a maximum height of 40 feet. The Village thwarted the plaintiff's efforts to erect the sign by issuing notices and threatening arrest.

On December 21, 1992, the plaintiff filed a three-count complaint against the Village. The complaint alleged that DOT issued an outdoor advertising permit which approved the plaintiff's plans for the advertising sign on the subject property. Since the Village has less than 25,000 inhabitants and has not elected by referendum to become a home rule unit of local government, the plaintiff's complaint asserted that the permit issued by DOT pursuant to the Act (225 ILCS 440/1 et seq. (West 1992)) provides full and complete authority governing the erection and maintenance of an advertising sign on the subject property. According to the plaintiff, the Village ordinance is preempted by the Act.

In count I, the plaintiff sought a judicial declaration authorizing the erection of the sign, or, alternatively, an injunction restraining the Village from interfering with the erection of the sign. Count II prayed that the court issue a writ of mandamus commanding the Village to give any and all approvals or permits necessary to erect the sign. Count III sought damages on the theory of inverse

condemnation, to compensate the plaintiff for the Village's taking of the subject property.

The Village responded by filing a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1992)), or, alternatively, pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1992)). The motion alleged that the plaintiff's complaint failed to state a cause of action since Village zoning ordinances are independent of the Act and prohibit the plaintiff from erecting the proposed sign on the subject property.

Thereafter, the plaintiff moved for partial summary judgment (735 ILCS 5/2—1005(c) (West 1992)) on counts I and II of the complaint. The motion alleged that there was no genuine issue of material fact which would preclude the court from entering judgment in the plaintiff's favor on counts I and II, since the permit issued by DOT "provides full and complete authority for erection and maintenance" of the sign.

On May 6, 1993, the trial court granted the Village's motion to dismiss the plaintiff's complaint with prejudice. The court found there was no just reason to delay enforcement of the dismissal. (134 Ill. 2d R. 304(a).) The plaintiff appealed.

■ In the present case, the Village moved to dismiss the plaintiff's complaint pursuant to section 2—619 of the Code. As an alternate basis for dismissal, the Village moved to dismiss under section 2—615. The legal theories for proceeding on a motion to dismiss under sections 2—615 and 2—619 differ. A section 2—615 motion attacks the legal sufficiency of the complaint by asserting that it fails to state a cause of action upon which relief can be granted. Under section 2—619, a party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter which avoids or defeats the claim. (See *Bank of Northern Illinois v. Nugent* (1991), 223 Ill. App. 3d 1, 7-8.) Since the Village's motion to dismiss alleged that the plaintiff's complaint failed to state a cause of action, we will assume that the court dismissed the complaint on this theory and under section 2—615 of the Code.

■ When the legal sufficiency of a complaint is challenged by a section 2—615 motion to dismiss, all well-pleaded facts alleged in the complaint are taken as true. On review of a section 2—615 dismissal, we must determine whether the allegations of the complaint, when interpreted in a light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted. (*DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 76; *Howard v. Druckemiller* (1992), 238 Ill. App. 3d 937, 941.) The motion should be granted only if the plaintiff can prove no set of facts to support the cause of action

asserted. (*Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542.) This process does not require the court to weigh findings of fact or determine credibility. As such, the reviewing court is not required to defer to the trial court's judgment and will review the matter *de novo*. *Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 583.

The pivotal issue in this case is whether the Act (225 ILCS 440/1 *et seq.* (West 1992)) preempts the authority of *non*-home-rule municipalities to enact more stringent outdoor advertising regulations than those provided by the Act.

■ The stated purpose of the Act is to regulate the use of advertising signs and devices in areas adjacent to interstate highways and primary highways "to protect the public investment in such highways, to promote the recreational value of public travel, to preserve natural beauty and to promote the reasonable, orderly and effective display of such signs, displays and devices." (225 ILCS 440/1 (West 1992).) The Act became effective on July 1, 1971, in response to Congress' enactment of the Highway Beautification Act of 1965. (23 U.S.C. § 131 *et seq.* (1970) (the Lady Bird Bill).) Under the Beautification Act, if a State does not provide for the effective control of advertising signs located within 660 feet of interstate highways, then the Secretary of Transportation would reduce the Federal highway funds normally paid to that State by 10%. (23 U.S.C. § 131(a) (1970).) To ensure the receipt of funds, the Act was passed in Illinois to provide for the control of outdoor advertising signs located within 660 feet of interstate highways.

Section 6 of the Act (225 ILCS 440/6 (West 1992)) provides restrictions on the size, lighting, and spacing of signs which are erected in "business areas," defined in section 3.12 of the Act as follows:

> " 'Business area' means any part of an area adjacent to and within 660 feet of the right-of-way which is at any time zoned for business, commercial or industrial activities under the authority of any law of this State; or not so zoned, but which constitutes an unzoned commercial or industrial area as defined in Section 3.11. However, as to signs along Interstate highways, the term 'business area' includes only areas which are within incorporated limits of any city, village, or incorporated town, as such limits existed on September 21, 1959, and which are zoned for industrial or commercial use, or both, or to portions of Interstate highways which traverse other areas where the land use, as of September 21, 1959, was established by State law as industrial or commercial, or both." (225 ILCS 440/3.12 (West 1992).)

The restrictions of section 6 limit the size of a sign to 1,200 square feet, 30 feet high and 60 feet wide. (225 ILCS 440/6.01 (West 1992).) Signs that do not give public service information may not be illuminated by flashing, intermittent, or moving lights. (225 ILCS 440/6.02 (West 1992).) No sign may be erected that obscures or interferes with an official traffic sign, and signs on the same side of interstate highways and expressways must be erected at least 500 feet apart. 225 ILCS 440/6.03 (West 1992).

Section 1 of the Act specifically states that "the regulatory standards set forth in Section 6 of this Act are consistent with customary use in this State and will properly and adequately carry out each and all of the purposes of this Act, more severe restrictions being inconsistent with customary use and ineffective to accomplish the purposes of this Act." (225 ILCS 440/1 (West 1992).) Notwithstanding this paragraph, section 7 of the Act *specifically authorizes* a "State, county or municipal zoning authority" to regulate the size, lighting, and spacing of signs, consistent with the intent of the Act and with "customary use." 225 ILCS 440/7 (West 1992).

The internal inconsistency of sections 1 and 7 of the Act has been the subject of much litigation. In the most recent case on this issue, *Scadron v. City of Des Plaines* (1992), 153 Ill. 2d 164, on certification from the United States Court of Appeals for the Seventh Circuit, our supreme court considered whether the City of Des Plaines, a home rule unit, could enact more stringent regulations concerning outdoor advertising than those provided by section 6 of the Act.

In holding that the city's ordinance was *not* preempted by the Act, the *Scadron* court focused on the provisions of the Illinois Constitution which delineate the powers of a home rule unit of local government. Under article VII, section 6, of the 1970 Constitution, each municipality with over 25,000 inhabitants, or a municipality which elects by referendum to become a home rule unit of government, may perform any function pertaining to the government and affairs of the unit, subject only to the restrictions imposed therein. Pursuant to this provision, a home rule unit of government may impose regulations for the protection of the public health, safety, morals, and welfare; it may license, tax, and incur debt. (Ill. Const. 1970, art. VII, § 6(a); *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166.) Under section 6(i) of article VII of the Illinois Constitution, the power of a home rule unit to exercise and perform concurrently with the State is limited *only when* the General Assembly *specifically declares* the State's exercise to be exclusive. (Ill. Const. 1970, art. VII, § 6(i); *American Telephone & Telegraph Co. v. Village of Arlington Heights* (1993), 156 Ill. 2d 399, 420-28.) Since the legislature included

section 7 in the Act, expressly authorizing a municipality to regulate signs, the *Scadron* court stated that "[i]t cannot seriously be argued that the General Assembly specifically has declared that the State has the exclusive power to regulate signs within 660 feet of interstate highways." (*Scadron*, 153 Ill. 2d at 186.) After reviewing the entire Act, the *Scadron* court concluded that the legislature did not specifically express the intent to limit a home rule unit's concurrent power to regulate signs. (*Scadron*, 153 Ill. 2d at 188.) Thus, the court upheld the Des Plaines city ordinance which included more stringent regulations concerning outdoor advertising than the Act.

■ As alleged in the plaintiff's complaint, the Village of Wadsworth is not a home rule municipality because it has less than 25,000 inhabitants and has not elected by referendum to become a home rule unit of local government. Contrary to the constitutional provisions applicable to home rule units, non-home-rule municipalities, such as the Village of Wadsworth, are governed by "Judge Dillon's Rule," which was applicable to all units of local government in Illinois under the 1870 Constitution. Under Dillon's Rule, a non-home-rule unit may exercise only those powers specifically granted to it by the Constitution or by statute. ILCS Ann., 1970 Const., art. VII, § 6, Constitutional Commentary, at 512 (Smith-Hurd 1993).

Based on *Scadron* and the constitutional powers conveyed to home rule units, the plaintiff asserts that when preemption of a local ordinance by State law is at issue, different standards apply to home rule and non-home-rule units of local government. Since Dillon's Rule limits the powers of a non-home-rule municipality to those expressly granted by the Constitution or by statute, the plaintiff asserts that when there is a State law regulating a certain field, such as outdoor advertising, a non-home-rule municipality may not adopt ordinances which conflict or infringe upon the spirit of the State law. In the event of a conflict, the plaintiff asserts that the ordinance of a non-home-rule unit must be struck down.

The plaintiff cites *Pesticide Public Policy Foundation v. Village of Wauconda* (1987), 117 Ill. 2d 107 (Miller, J., dissenting), in support of its proposition. In *Pesticide Public Policy*, on certification from the United States Court of Appeals for the Seventh Circuit, our supreme court considered whether an ordinance adopted by a non-home-rule municipality which regulated the use of pesticides was preempted by the Illinois Pesticide Act of 1979 (Ill. Rev. Stat. 1983, ch. 5, pars. 801 through 828) and the Illinois Structural Pest Control Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 2201 through 2225). The court first noted that in enacting the statutes regulating pesticides the legislature expressed a desire for uniformity of regulations. The village argued

that the legislature could not have intended a uniform, statewide scheme of pesticide regulation because the Act did not expressly preempt the power of a home rule unit to adopt regulations in this field. In holding that the village ordinance impermissibly interfered with the State's licensing scheme by prohibiting pesticide application when the State would allow it, the court noted that home rule and non-home-rule units of government may occupy different positions under the Illinois Constitution on preemption issues. By requiring persons intending to apply pesticides to obtain a village permit and pay a required fee, the court opined that the village imposed "an additional layer of regulation" and "substituted its opinion of what is necessary to promote public health for the opinions of the entities to which the legislature has delegated statewide authority over pesticides because of their technical expertise." (*Pesticide Public Policy*, 117 Ill. 2d at 119.) According to the *Scadron* court, "allow[ing] a local non-home-rule unit of government to override the determinations of the legislature would frustrate the purposes of the acts." 117 Ill. 2d at 119.

Similarly, the plaintiff points out that in cases involving preemption under the Illinois Environmental Protection Act courts have treated home rule and non-home-rule units of local government differently. In *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494 (Underwood, J., concurring; Ryan, J., specially concurring; Goldenhersh, C.J., joined by Clark, J., dissenting), the court considered whether the plaintiff was required to obtain a permit from the county which authorized him to operate a sanitary landfill. Since the county was a home rule unit, the court analyzed whether the county zoning ordinances were preempted by State law by considering whether the statute at issue specifically declared that its exercise was exclusive. Since the General Assembly did not declare State exclusivity over environmental matters, the plurality held that article VII, section 6, of the Illinois Constitution authorized the county, a home rule unit, to regulate in this field.

In *County of Kendall v. Avery Gravel Co.* (1984), 101 Ill. 2d 428 (Ryan, C.J., dissenting), *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406 (Ryan, J., dissenting), and *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, our supreme court considered whether regulations of the State Environmental Protection Agency issued pursuant to the Environmental Protection Act preempted certain ordinances promulgated by non-home-rule units of local government. In each case, the court held that the Act in question was intended to be the exclusive authority and that the local ordinances or regulations were preempted.

The plaintiff contends that these cases indicate that the home rule or non-home-rule status of a municipality controls its ability to regulate in an area occupied by State law. The plaintiff relies on the following language to support its analysis:

> " 'After *O'Connor* and *Carlson*, it is clear that the Act operates to exclude non-home-rule units from the regulation of sanitary landfills. This conclusion, however, is not incompatible with the result reached in *City of Chicago*, which applied to home rule units. *An assessment of the relationship between State legislation and regulations enacted by a local governmental unit requires a different approach when the local unit is a home rule unit.*'" (Emphasis added.) (*County of Kendall*, 101 Ill. 2d at 434, quoting *County of Cook*, 75 Ill. 2d at 507.)

Based on the italicized language, the court in *County of Cook* proceeded to modify the holding of *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, and held that *only a* home rule municipality may legislate concurrently with the General Assembly in the area of environmental control. *County of Cook*, 75 Ill. 2d at 514.

As evidenced by his dissents to both the plurality and supplemental opinions in *Carlson* (62 Ill. 2d at 411, 418), his dissent in *County of Kendall* (101 Ill. 2d at 436), and his special concurrence in *County of Cook* (75 Ill. 2d at 520), Justice Ryan has consistently disagreed with the conclusion that different standards apply for home rule and non-home-rule units on the issue of their ability to regulate environmental matters. In *Carlson*, Justice Ryan disagreed with *dicta* expressed by the plurality wherein the plurality modified the holding of *City of Chicago* by stating that non-home-rule units may not regulate the disposal of garbage and waste and the location of landfills. According to Justice Ryan, the authority of non-home-rule units to regulate environmental matters is found in their police powers and has never been modified or rescinded. Thus, Justice Ryan believes that all units of local government have the authority to enact regulations affecting the environment.

The plaintiff strongly asserts that the holdings of the aforementioned case law and *Pesticide Public Policy* indicate that non-home-rule units have no authority to enact regulations in fields for which the State has enacted a comprehensive regulatory scheme. The *Scadron* court determined that the home rule municipality was entitled to enact more stringent regulations than those provided for in the Act based on a finding that the Act did not specifically preempt the authority of a home rule unit to enact regulations in this area. (*Scadron*, 153 Ill. 2d at 188.) Based on *County of Cook, Carlson, O'Connor,*

and *County of Kendall,* the plaintiff urges us to apply the converse holding of *Scadron* to the facts in this case, namely, if home rule municipalities may enact more stringent regulations than those in the Act, non-home-rule municipalities are precluded from doing so. However, the plaintiff fails to cite authority in support of this proposition.

Our research has indicated that in cases addressing the issue of local regulations concerning outdoor advertising the home rule or non-home-rule status of a municipality was not the determining factor. In *Dingeman Advertising, Inc. v. Village of Mt. Zion* (1987), 157 Ill. App. 3d 461, one of the cases addressed by the *Scadron* court, the Appellate Court, Fourth District, rejected a prior decision, *Dolson Outdoor Advertising Co. v. City of Macomb* (1977), 46 Ill. App. 3d 116, and upheld the validity of village regulations concerning the size of advertising signs. Although the village was a non-home-rule unit, the *Dingeman* court did not concern itself with this factor in its analysis. As in *Scadron,* the court considered the conflict between sections 1 and 7 of the Act. The *Dingeman* court reasoned as follows:

> "If signs in municipal areas could only be limited to the maximum limitation of the Act [1,200 square feet], the purpose of the Act 'to preserve natural beauty and to promote the reasonable, orderly and effective display of such signs, displays and devices' would be frustrated. We hold that, insofar as section 1 and section 7 conflict, section 7 controls and uphold Mt. Zion's right to regulate the size, lighting, and spacing of advertising signs consistent with customary use." *Dingeman,* 157 Ill. App. 3d at 465.

Although a home rule municipality was at issue in *National Advertising Co. v. Village of Downers Grove* (1988), 166 Ill. App. 3d 58, this court adopted the rationale of *Dingeman* and held that section 7 of the Act prevails over section 1. According to the court in *National Advertising,* "[t]he enactment of more restrictive local advertising sign regulations by a municipality would not jeopardize the continued receipt of Federal highway funds, and it was for that purpose the legislature adopted the Highway Advertising Control Act so as to comply with the requirements of the Highway Beautification Act of 1965." *National Advertising,* 166 Ill. App. 3d at 62; accord *Universal Outdoor, Inc. v. Village of Elk Grove* (1990), 194 Ill. App. 3d 303.

Likewise, in *Whiteco Metrocom Division v. Village of Downers Grove* (1990), 197 Ill. App. 3d 174, without reference to home rule or non-home-rule status, this court adopted the rationale of *Dingeman* and determined that the regulations of section 6 imposed *maximum* standards. As such, the court determined that in light of section 7 of the Act, signs not exceeding the 1,200-square-foot limitation of section

6 were consistent with "customary use." According to the *Whiteco* court, the only sign regulation that would be inconsistent with cus-tomary use would be greater than 1,200 square feet. *Whiteco*, 197 Ill. App. 3d at 182.

In *Dingeman, National Advertising,* and *Whiteco* the courts addressed the inconsistency between the restrictive provisions of sections 1 of the Act and the permissive provisions of section 7. In construing the statute, the courts attempted to ascertain and effectuate the legislative intent underlying the statute by considering the statute as a whole, its nature, purposes, and the evil the statute intended to remedy. (*Whiteco*, 197 Ill. App. 3d at 181.) As previously indicated, the purpose of the Act is to "promote the recreational value of public travel, to preserve natural beauty and to promote the reasonable, orderly and effective display of such signs, displays and devices." (225 ILCS 440/1 (West 1992).) It was enacted in response to the Beautification Act to ensure against the loss of 10% of its Federal highway funds. (23 U.S.C § 131(b) (1970).) Pursuant to the analysis of *Scadron, Dingeman, National Advertising* and *Whiteco*, the existence of section 7 in the Act indicates a specific legislative intent to allow a local unit of government to adopt more stringent regulations than those provided for in section 6. The plaintiff's assertion that section 7 of the Act conveys only the authority to enact *less severe* restrictions than section 6 is contrary to *Scadron* and the case law upon which it relies.

Under article VII, section 6, of the Constitution, a home rule unit may enact regulations when the State has not specifically declared its exercise to be exclusive. Preemption was the issue in *Scadron* because a home rule municipality was involved. Since the municipal-ity at issue in this case is non-home-rule, *Scadron* is instructive, but is not directly on point. In our view, and that embraced by Justice Ryan, preemption is not the issue when a non-home-rule unit is involved. A non-home-rule unit is governed by Dillon's Rule. Under Dillon's Rule, non-home-rule units of local government only possess those powers which are specifically conveyed by the Constitution or by statute. Thus, a non-home-rule unit may regulate in a field occupied by State legislation when the Constitution or a statute specifically conveys such authority.

In this case, the Act in question specifically authorizes "*a State, county or municipal zoning authority*" to enact laws or ordinances in the area of outdoor advertising. Under Dillon's Rule, this permissive provision *conveys* the authority to regulate to non-home-rule units. It

does not restrict. Since the *Whiteco* court determined that the restrictions of section 6 impose maximum standards, when read as a whole the Act specifically authorizes a non-home-rule unit to impose more severe restrictions on outdoor advertising than those provided by section 6 of the Act.

■ The factor which distinguishes the present case from the cases cited by the plaintiff is section 7 of the Act, which specifically authorizes a municipality to enact regulations concerning outdoor advertising. In *Pesticide Public Policy* and the cases concerning the EPA cited by the plaintiff, local regulation was not authorized or intended in the statutory scheme. We agree that in the absence of such a provision a non-home-rule unit's authority to regulate in this field would be questionable. However, when a provision such as section 7 has specifically been included in the statutory scheme, Dillon's Rule applies and a non-home-rule unit's authority to regulate is clear.

Further, allowing a non-home-rule municipality to regulate the size, illumination, and placement of signs in areas zoned for commercial and industrial purposes will not interfere with the State's policy of effectively controlling outdoor advertising signs in compliance with the Beautification Act. The clear and express language of section 7 of the Act authorizes *any* municipality to regulate signs, without regard to home rule or non-home-rule status. To construe the statute as the plaintiff urges would read in provisions that do not exist, would contravene applicable case law, and would frustrate the intent of the Act.

For these reasons, we conclude that the Village of Wadsworth ordinance which regulates the size and illumination of signs in areas zoned for commercial and industrial purposes is not preempted by the Act. Therefore, we determine that the section 2—615 dismissal was proper because the plaintiff can prove no set of facts to support the causes of action asserted in its complaint.

■ The plaintiff further asserts that the Village ordinance is invalid because it entirely bans off-premises advertising signs. The sign proposed to be erected by the plaintiff did not comply with the Village ordinance concerning the square footage limitation, the height limitation, or with the prohibition against illuminated signs. Since we have dismissed the plaintiff's complaint with prejudice on the basis that the sign violates a valid Village ordinance, we need not address the issue of the total ban on appeal.

For the foregoing reasons, we affirm the judgment of the circuit

court of Lake County which dismissed the plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure.

Affirmed.

WOODWARD and PECCARELLI, JJ., concur.