# Illinois Official Reports

## Appellate Court

*Armagan v. Pesha*, 2014 IL App (1st) 121840

| | |
|---|---|
| Appellate Court Caption | OSEP ARMAGAN, M.D., Plaintiff-Appellee, v. MICHAEL PESHA, KATHY PESHA, and STEPHEN PESHA, Individually and as Agents for Gold Dust Coins, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket Nos. 1-12-1840, 1-12-2783 cons. |
| Filed | March 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for conversion, breach of bailment, and a violation of the Illinois Bailment Insurance Act arising from plaintiff's tender of 253 gold coins to defendant and his coin business, the appellate court vacated the trial court's order deeming that the facts plaintiff requested to be admitted by defendant pursuant to Supreme Court Rule 216 were admitted due to defendant's untimely response to the request, since defendant's response to the request to admit was timely served on plaintiff when it was mailed to plaintiff within 28 days after the request to admit was served on defendant; therefore, the cause was remanded to the trial court with directions to allow defendant's responses to the request to admit to stand, the order granting summary judgment for plaintiff was vacated, and plaintiff's amended verified complaint was reinstated for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-13571; the Hon. Carolyn Quinn, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on
Appeal

Naughton Law Office, of Tinley Park (Gino P. Naughton, of counsel), for appellants.

Kerkonian Law Firm PC, of Evanston (Karnig S. Kerkonian, of counsel), for appellee.

Panel

JUSTICE PIERCE delivered the judgment of the court, with opinion. Presiding Justice Harris and Justice Simon concurred in the judgment and opinion.

## OPINION

¶ 1    Defendants bring this appeal arguing the circuit court erred in denying their motion to dismiss plaintiff's verified complaint; in granting plaintiff's motion to deem facts admitted; and in granting summary judgment on two counts in favor of plaintiff. For the following reasons, we affirm in part and reverse in part and remand to the circuit court for further proceedings consistent with this opinion.

¶ 2                                    BACKGROUND

¶ 3    Plaintiff's verified complaint alleged he tendered 253 gold coins to defendant Michael Pesha (Michael) and his business, defendant Gold Dust Coins, for safekeeping and when plaintiff later demanded the return of those coins, defendants refused. All three Pesha defendants are alleged to have an interest in Gold Dust Coins. Attached to plaintiff's verified complaint is Exhibit E, a purported receipt for the deposit of the gold coins. The verified complaint alleged eight causes of action sounding in conversion, breach of bailment, violation of the Illinois Bailment Insurance Act (765 ILCS 1015/0.01 *et seq.* (West 2008)), violation of section 7-204(a) of the Illinois Uniform Commercial Code (UCC) (810 ILCS 5/7-204(a) (West 2008)), common law fraud, consumer fraud, unjust enrichment and constructive trust.

¶ 4    Defendants filed a motion to strike and dismiss the verified complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)). After hearing, the circuit court denied the motion to dismiss. Defendants then filed a verified answer wherein they denied all material facts alleged.

¶ 5    Plaintiff later served Michael with a request to admit facts on November 18, 2010. Michael filed his response to these requests with the circuit court clerk and mailed the response to plaintiff's counsel on December 17, 2010.

¶ 6    On December 30, 2010, plaintiff filed a motion to deem all requests admitted because the response was not served on the plaintiff within the 28 days as provided in Illinois Supreme Court Rule 216 (eff. May 30, 2008). Plaintiff argued Illinois Supreme Court Rule 12 (eff. Dec. 29, 2009), which governs proof of service, provides that service by mail is complete four days after mailing and, therefore, plaintiff's service of the request to admit on defendant was

effective on November 22, 2010, making the response due 28 days later, or December 20, 2010. Because Michael's response was mailed on December 17, 2010, service to plaintiff's counsel was complete on December 21, 2010, one day past the deadline. Michael responded to the motion arguing that he timely served plaintiff with his response to the requests to admit by filing and mailing his response on December 17, 2010. Furthermore, Michael asserted that he was out of town prior to December 17, 2010 and was unable to affix his signature to the response prior to that date. On March 10, 2011, the circuit court granted plaintiff's motion and entered an order deeming all requested facts admitted for failing to comply with Rule 216.

¶ 7        Michael filed a motion to reconsider on April 8, 2011, arguing that if the court finds his service was untimely, the court has the discretion to allow the response to be filed late under Illinois Supreme Court Rule 183 for good cause shown. Plaintiff responded arguing that Michael's service of his response to the Rule 216 requests to admit were untimely and, furthermore, even if Michael's motion to reconsider is read as a Rule 183 request for an extension of time, the motion fails because he has not established good cause to invoke the circuit court's discretion to allow the late service. In his reply, Michael requested the court grant him an extension of time to serve his response *nunc pro tunc* and allow his response. Supporting the reply was Michael's sworn affidavit wherein he stated that he was out of state for a period of time prior to December 17 and was unable to sign the document before his return. On July 15, 2011 the court denied the motion to reconsider and found that Michael being out of town between December 13 and December 17, when he signed the requests, was not good cause to allow a late response of one day. The court noted that Michael did not explain why he did not sign the response before he left town on December 13.

¶ 8        Based on the judicial admissions, plaintiff moved for summary judgment on all counts. Plaintiff argued all relevant material facts had been deemed admitted and, therefore, it was undisputed that plaintiff left the coins with Michael to store and later sell upon plaintiff's request and those coins were not returned to plaintiff when demanded. Michael responded, arguing that he had "vigorously" disputed all facts alleged by plaintiff. Michael asserted that plaintiff did not leave the gold coins with him; that he did not place them in a safe; that he did not make a notation on the receipt that referenced the gold pieces; he denied having any of plaintiff's gold coins or money; and that he told plaintiff he could not keep the coins at the store unless plaintiff sold them to Michael. He further argued that "plaintiff's credibility is at issue in this matter" and asserted that the disparate level of education between Michael and the plaintiff should be taken into consideration. He disputed the authenticity of the receipt attached to the verified complaint and asserted that the court should not rely on the receipt to enter summary judgment. Furthermore, he argued that questions of fact existed which defeat plaintiff's motion for summary judgment. The response was supported by Michael's own affidavit wherein he disputed plaintiff's asserted facts and allegations.

¶ 9        After a hearing on November 8, 2011, the circuit court, based on the facts deemed admitted, entered a written order granting summary judgment in plaintiff's favor on the conversion and breach of bailment counts. For his remedy, plaintiff elected the imposition of a constructive trust. On September 5, 2012, the court entered a deficiency judgment against defendants in the amount of $459,995.20 and imposed a constructive trust on defendants' precious metal inventories and cash until satisfaction of the deficiency judgment. This appeal followed.

¶ 10                                            ANALYSIS

¶ 11        Defendants appeal the circuit court's ruling that deemed facts admitted; the denial of their
section 2-615 motion to dismiss; and the entry of summary judgment in plaintiff's favor on
counts I and II.

¶ 12                    I. Motion to Deem Facts Admitted and Summary Judgment

¶ 13        Plaintiff requested that Michael admit the following facts pertinent to this appeal:

> "(6) Exhibit E is a true copy of a Gold Dust Coin receipt dated on or about June 6,
> 2008.
>
>                                            * * *
>
> (16) The gold purchased by Gold Dust Coin in the gold purchase transaction
> evidenced by Exhibits F and G was already in the possession of Gold Dust Coin at the
> time of the telephone call from Plaintiff on or about June 30, 2008.
>
>                                            * * *
>
> (21) While Plaintiff was in the Store on June 6, 2008, Defendant Pesha told
> Plaintiff that Plaintiff could store his gold at the Gold Dust Coin.
>
> (22) While Plaintiff was in the store on June 6, 2008, Defendant Pesha told Plaintiff
> that, when Plaintiff was ready to sell the gold Plaintiff left with Defendants, Plaintiff
> could call Defendant Pesha and direct him to sell the gold;
>
> (23) While Plaintiff was in the Store on June 6, 2008, Defendant Pesha told
> Plaintiff that Plaintiff could always come in to the store to retrieve the gold he left with
> Defendants.
>
> (24) Exhibit E indicated that Plaintiff left at the store 143 Kruggerands and 110
> Maple Leaf gold coins;
>
> (25) Plaintiff left 143 Kruggerands and 110 Maple Leaf gold coins with Defendant
> Pesha on or about June 6, 2008.
>
>                                            ***
>
> (27) Defendant Pesha told Plaintiff, in a telephone conversation between them on
> October 5, 2009 that, given the amount of the sale directed by Plaintiff in Exhibit H,
> Defendant Pesha preferred to handle the transaction in person.
>
> (28) Plaintiff came to the Store, in person, on or about October 8, 2009, and
> demanded the return of the gold coins.
>
> (29) To date, Defendants have not returned to Plaintiff the gold coins or paid
> Plaintiff for the value of the gold coins."

¶ 14        Defendants' appeal involves the question of whether Michael's response was timely served
where it was mailed to plaintiff within 28 days after his receipt of plaintiff's requests to admit.
To answer this question, we must construe both Rule 216 and Rule 12. *Vision Point of Sale,
Inc. v. Haas*, 226 Ill. 2d 334, 341-42 (2007). We construe supreme court rules in the same
method as statutes and our review is *de novo*. *Id*. at 342.

¶ 15        Illinois Supreme Court Rule 216(a) (eff. May 30, 2008) provides that "[a] party may serve
on any other party a written request for the admission by the latter of the truth of any specified
relevant fact set forth in the request." Rule 216(c) also provides in pertinent part:

> "Each of the matters of fact and the genuineness of each document of which admission
> is requested is admitted unless, within 28 days after service thereof, the party to whom

the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why the party cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part." Ill. S. Ct. R. 216(c) (eff. May 30, 2008).

¶ 16    The purpose of Rule 216 is to establish certain material facts as true, to narrow the issues for trial. *P.R.S. International, Inc. v. Pax Shred Corp.*, 184 Ill. 2d 224, 238 (1998); *In re Application of the County Treasurer & ex officio County Collector*, 2012 IL App (1st) 112897, ¶ 27. Rule 216(c) does not require a party to file a response within the 28-day deadline but, rather, "only requires that responses to requests for admissions be *served* on the opposing party within the specified time period." (Emphasis in original.) *Bright v. Dicke*, 166 Ill. 2d 204, 207 (1995). Service of the response is the operative event, not filing. *Id.*; *Vision Point of Sale, Inc.*, 226 Ill. 2d at 357. "When a response [to a request to admit] is filed with the court is irrelevant." *Bright*, 166 Ill. 2d at 207. The requirement to provide a timely sworn response "must be strictly complied with." *In re Application of the County Treasurer*, 2012 IL App (1st) 112897, ¶ 27. Failing to comply with Rule 216(c) can result in judicial admission of the facts and is considered incontrovertible. *Id.*

¶ 17    Defendants first argue that the trial court erred in its analysis when it found Michael's response to the request to admit was untimely because it was served 1 day beyond the 28-day time limit imposed under Rule 216. We agree.

¶ 18    The trial court reasoned that Illinois Supreme Court Rule 12(c) provides that service by mail is complete four days after the mailing. Because plaintiff mailed the request to admit on November 18, service on Michael was complete on November 22, giving Michael until December 20 to serve plaintiff with his response, otherwise the facts would be deemed admitted under Rule 216. The trial court found that, although the response was mailed on December 17, service was complete four days later on December 21, or one day late.

¶ 19    There are several errors with this analysis. The method or act of "service" is not the equivalent of "proof" of service. The method of service of documents, other than service of process and serving a complaint, is controlled by Illinois Supreme Court Rule 11 (eff. Dec. 29, 2009). Rule 11, entitled "Manner of Serving Documents Other Than Process and Complaint on Parties Not in Default in the Trial and Reviewing Courts," authorizes the service of documents by various methods, including mailing. Rule 11 provides in pertinent part:

"(b) Method. Documents shall be served as follows:

* * *

(3) by depositing them in a United States post office or post office box, enclosed in an envelope, plainly addressed to the attorney at the attorney's business address, or to the party at the party's business address or residence, with postage fully prepaid[.]" Ill. S. Ct. R. 11 (eff. Dec. 29, 2009).

There is nothing ambiguous in this language and, indeed, it has been routinely followed by lawyers and unrepresented litigants to the effect that one serves a document on the opposing party by depositing the document in the mail, assuming that is the method of service selected. Nothing in Rule 11 indicates that anything further need be done in order to "serve" a document. In the present case, there is no question the defendant mailed his response to plaintiff on December 17. There was no issue of whether the response was "served" under Rule

216. The issue before the trial court was the timeliness of service. This issue relates to Rule 12, not Rule 11.

¶ 20    Rule 12, entitled "Proof of Service in the Trial and Reviewing Courts; Effective Date of Service," in pertinent part provides:

"(b) Manner of Proof. Service is proved:

* * *

(3) in case of service by mail ***, by certificate of the attorney, or affidavit of a person other than the attorney, who deposited the paper in the mail ***, stating the time and place of mailing ***, the complete address which appeared on the envelope ***, and the fact that proper postage *** was prepaid[.]

***

(c) Effective Date of Service by Mail. Service by mail is complete four days after mailing." Ill. S. Ct. R. 12(c) (eff. Dec. 29, 2009).

¶ 21    It would seem inevitable that litigants would dispute when documents were effectively served. In this regard, the Committee Comments to Rule 12 state that "[P]aragraph (c) was added in 1971 to establish, when service is made by mail, a definite starting point for measuring time periods that begin to run from the date of service, as in Rules 213(c) and 216(c)." Ill. S. Ct. R. 12(c), Committee Comments (rev. July 1, 1975). Thus, in this case, the starting point for measuring the time period for defendant to timely respond to the request to admit was 28 days from the date that service of the plaintiff's requests on him was completed. Nothing in Rule 12 can reasonably be construed to mean that the time for compliance is viewed from the point that the requesting party is served. To accept this view, where a party elects to serve its response by mail, the compliance period would be reduced by as much as 4 days, from 28 days to 24 days, and would needlessly encourage motion practice on the issue of timely compliance. Rule 216 requires the response to be served within 28 days, not received within 28 days. Therefore, reading Rules 11 and 12 together, they clearly and unambiguously provide that documents are served when placed in an envelope, properly addressed with postage prepaid and deposited in the mail. In the event service is questioned, service is proved by compliance with Rule 12. Because the response was timely mailed it was error to deem the requested facts admitted. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 358 (2007) ("The inverse is implicit in the rule–requests will not be deemed admitted if the responding party serves a proper response within 28 days after service.").

¶ 22    We further note that *Vision Point* acknowledged that the responses in that case were timely served and this was "the only action required pursuant to Rule 216 and *Bright*." *Id*. at 357-58. A review of *Vision Point of Sale, Inc. v. Haas*, 366 Ill. App. 3d 692 (2006), shows that the Rule 216 request was faxed to the plaintiff on December 14 (effective the next court day under Rule 12 (e)) and the response was "sent" on January 12 or 28 days later. Here, as in *Vision Point*, defendant timely served his response to plaintiff's Rule 216 request to admit when he deposited the response in the mail within 28 days of his receipt of the request.

¶ 23    Under Rule 216, Michael had the burden to serve his response to the request to admit within 28 days from the date plaintiff served the request and, under Rule 12, the clock began to tick 4 days after the request was properly placed in the mail. This is so regardless of whether Michael actually received the request at that time or later. See *People v. Bywater*, 223 Ill. 2d 477, 491 n.4 (2006) (Freeman, J., dissenting, joined by Burke, J.); *Commonwealth Eastern Mortgage Co. v. Vaughn*, 179 Ill. App. 3d 129, 134 (1989) (mailing the notice to defendant's

attorney was all that was required of plaintiff in serving the notice of motion under Supreme Court Rule 11). Therefore, Michael timely responded to the Rule 216 request to admit by mailing his response within 28 days of November 20. Nothing in Rule 216 requires the response to be received by the requesting party within 28 days of serving the request.

¶ 24 Next, when defendant sought an extension of time pursuant to Rule 183 to serve his Rule 216 response, the trial court relied on *Bright v. Dicke*, 166 Ill. 2d 204, 207 (1995), in denying his motion. The trial court focused on our supreme court's reiteration that supreme court rules "are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Id*. at 210. On reconsideration, the trial court also concluded that, pursuant to *Bright*, even if Michael had formally sought an extension of time under Rule 183, he had the burden to establish good cause for an extension of time to serve his response late, which he failed to do. The trial court found that his affidavit explaining that he was out of state from December 13 until December 17 and unavailable to sign the response was insufficient to establish good cause because he did not explain why he "could not sign the [r]esponses before going out of town." The determination of whether good cause exists for allowing a late response is reviewed for an abuse of discretion. *Larson v. O'Donnell*, 361 Ill. App. 3d 388, 395 (2005). A trial court abuses its discretion when no reasonable person would take the view adopted by the court. *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 974 (1997).

¶ 25 Rule 183 affords the trial court, for good cause shown on motion and notice to the opposite party, the discretion to extend the time for doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time. Here, the defendant brought the request for an extension of time in his motion to reconsider the earlier ruling that deemed the requests admitted. To the extent the court may have considered the motion as improper for a motion to reconsider, we find the court misapprehended the nature of the request. While it would have been better to separately request an extension of time to serve the response, the extension request was clearly brought as an alternative to the order previously entered. Plaintiff had notice of the requested extension and he resisted the nature and substance of the motion and the court fully considered the grounds upon which it was presented. As such, the court should have considered and granted the motion for an extension of time to serve the Rule 216 response.

¶ 26 The record does not indicate that the trial court considered the shift from the bright-line test employed by the post-*Bright* decisions as discussed by our supreme court when it revisited the issue in *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334 (2007). In *Vision Point*, our supreme court discussed the "post-*Bright* decisions which *** created a 'trap for the unwary' " where courts did not consider " 'mistake, inadvertence, or attorney neglect' " as the basis for good cause to support an extension pursuant to Rule 183. *Id*. at 348. The court noted that because of the limited inquiry to determine good cause, in most cases where a respondent had failed to comply with Rule 216(c) the respondent was unable to establish good cause for a Rule 183 extension. *Id*. at 350-51. This created an "unworkable analytical framework that is unduly severe." *Id*. at 351. The court observed that testimony before the Rules Committee indicated that diligent attorneys sometimes make technical and inadvertent mistakes and that after *Bright* the trial courts were perceived as being improperly limited in the exercise of discretion in considering objective evidence relevant to its good cause decisions. *Id*. at 351-52. Further, the supreme court emphasized that "there is a broad overall policy goal of resolving cases on the merits rather than on technicalities (see, *e.g.*, *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d

112, 123 (1998) (in resolving discovery disputes, the goal is to " 'insure[ ] both discovery and a trial on the merits' ))." *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d at 351. The supreme court explained that the good-cause analysis includes "all objective, relevant evidence presented by the delinquent party with respect to why there is good cause for its failure to comply *** and why an extension of time should now be granted." *Id*. at 353. This consideration includes "mistake, inadvertence, or attorney neglect" but does not permit "an open-ended inquiry" unrelated to the noncompliance. *Id*. The purpose of good-cause review is "in the interest[ ] of judicial economy and the need to reach an equitable result." *Id*. at 354.

¶ 27     *Vision Point* makes clear that Rule 216 requests to admit are discovery tools. *Id*. at 343. As such, broad discretion is vested in the trial court in the administration of its trial docket and its supervision over the conduct of discovery. The goals are to do justice and to not allow discovery to become a "trap for the unwary" and to resolve disputes on the merits either through trial or settlement.

¶ 28     Since *Vision Point* we have issued several recent unpublished orders applying these more liberal standards to determine good cause under Rule 183. We refer to these cases, not as precedent, but as examples illustrative of situations brought before the trial court that were resolved with an appropriate exercise of discretion. See *Cooney v. Balmer*, 2012 IL App (2d) 199059-U (respondent filed her response with the clerk of the court within 28 days but failed to serve opposing party in that time; however, petitioner's counsel was in possession of the response within a few days of the 28-day deadline and, therefore, the trial court permitted the late service and did not err in granting respondent the extension and admitting the response); *In re Marriage of Burrell*, 2012 IL App (3d) 120101-U (trial court did not abuse its discretion in finding good cause shown where respondent filed her Rule 216(c) response with the clerk of the court but did not serve the response within 28 days due to attorney inadvertence).

¶ 29     Good cause requires fact-dependent analysis on a case-by-case basis. *Vision Point of Sale, Inc.*, 226 Ill. 2d at 353. It is undisputed that Michael mailed the response within 28 days of being served. Plaintiff's counsel was in possession of the response by December 21, 2010, at the latest, and most certainly by December 30, 2010 when he filed the motion to deem facts admitted with Michael's response to the requests attached. The trial court was permitted to consider all relevant evidence underlying the alleged delinquency, including the filing of the response with the trial court within 28 days of being served. "Discovery is not a tactical game" but, rather, "is intended as, and should be, a cooperative undertaking by counsel and the parties *** for the purpose of ascertaining the merits of the case and thus promoting either a fair settlement or a fair trial." *Williams v. A.E. Staley Manufacturing Co.*, 83 Ill. 2d 559, 566 (1981). The overall goal of litigation is to resolve disputes "on the merits rather than on technicalities." *Vision Point of Sale, Inc.*, 226 Ill. 2d at 352.

¶ 30     Here, the trial court abused its discretion in rejecting the proffered reason for not earlier serving the response, Michael was out of town, because he did not explain why he did not sign the response before going out of town. Clearly, the response had to be prepared, reviewed and signed before service. Had this not occurred, it is almost certain plaintiff would have moved to have the requests deemed admitted. Given the reality of practicing law and the daily demands of addressing most litigation matters, it is not unusual for an attorney to wait until the last moment to finalize a document for his client. While we do not condone or encourage noncompliance with court-imposed deadlines, trial courts must be mindful of and recognize the wisdom of Rule 183 and exercise properly the discretion granted thereby. In any event, we have previously affirmed a late filing because of the affiant's unavailability as good cause for

exercising discretion in allowing a late filing. *Hammond v. SBC Communications, Inc. (SBC)*, 365 Ill. App. 3d 879 (2006).

¶ 31    We find defendant served his response when he mailed the document within 28 days after he was served with the request to admit and that service as contemplated under Rule 216 was timely. To allow the circuit court's order to stand would contravene the requirements of Rule 216 and the plain language of Rule 12(c), the general goals of discovery and the overall policy to resolve disputes on the merits. Therefore, we vacate the trial court order deeming facts admitted and remand this cause to the circuit court with directions to allow defendants' original responses to plaintiff's request for admission to stand.

¶ 32    Based on the foregoing, we find it unnecessary to address other arguments in support of their appeal regarding their compliance with Rule 216.

¶ 33    Defendants also argue the trial court erred in granting plaintiff's motion for summary judgment. Plaintiff moved for summary judgment on all counts. The circuit court granted plaintiff's motion as to counts I and II, alleging conversion and breach of bailment. Because we find the circuit court erred in ruling the response was untimely and deemed the requested facts admitted, we vacate the order granting summary judgment in favor of plaintiff and reinstate the amended verified complaint for further proceedings.

¶ 34                                    II. Motion to Dismiss

¶ 35    Defendants also contend the circuit court erred in denying their section 2-615 motion to dismiss the verified complaint. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009); *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008). All well-pleaded facts in the complaint are taken as true and a reviewing court must determine whether the allegations of the complaint, construed in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Bell v. Hutsell*, 2011 IL 110724, ¶ 9. A trial court's ruling on a section 2-615 motion to dismiss is subject to *de novo* review. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1083-84 (1994).

¶ 36    Plaintiff alleged in his verified complaint that for approximately two years he purchased and sold gold coins through Gold Dust Coins without incident. After each transaction, defendants would give plaintiff a copy of a Gold Dust Coins receipt evidencing the transaction. On June 6, 2008, plaintiff allegedly sold eight coins to Gold Dust Coins. After the sale, plaintiff and Michael had a conversation after which plaintiff tendered 253 gold coins and several irregular gold pieces to Michael to keep in defendants' safes. Defendants or their agents counted the gold coins and Michael placed them into a box and kept them in a store safe.

¶ 37    On June 30, 2008, plaintiff spoke with defendants via telephone and requested they sell the irregular gold pieces on his behalf. After that sale, the proceeds were wired to plaintiff's bank account and the sale of the irregular pieces was evidenced on a receipt. In September 2009, plaintiff spoke with defendants and requested the sale of certain other gold coins. Plaintiff did not speak to Michael at that time. On October 5, 2009, plaintiff sent a letter directing Michael to sell the coins. Michael informed plaintiff that due to the large monetary amount of the transaction, the sale would have to be done in person. Plaintiff flew to Chicago on October 7, 2009, for this purpose only. However, Michael would not let plaintiff enter the store and refused to return the coins to plaintiff. At that time, plaintiff contacted Michael's attorney, who

- 9 -

refused to acknowledge plaintiff's receipt which evidenced plaintiff's deposit of the gold coins with defendants.

¶ 38    Defendants Michael Pesha, Kathy Pesha and Gold Dust Coins filed an abbreviated motion to dismiss the verified complaint. Defendants asserted two contradictory arguments. First, that plaintiff's claims were based on a written instrument not attached to the complaint, which required its dismissal pursuant to section 2-606 of the Code (735 ILCS 5/2-606 (West 2010)). Second, that the nature of plaintiff's alleged agreement with defendants was not evidenced in writing as required by the statute of frauds and the claims must be dismissed.[1]

¶ 39    Section 2-606 of the Code provides that if a claim is based on a written instrument, it "must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her." 735 ILCS 5/2-606 (West 2010). After review of the verified complaint, it is clear that plaintiff alleged defendants orally agreed to hold, store and, if requested, return his gold coins. Plaintiff attached to the complaint Exhibit E, alleging it was a receipt prepared by defendants for leaving the gold coins with defendants. We find plaintiff's claims, as alleged, are based on an oral agreement between the parties and are not based on Exhibit E, or any written document. Exhibit E was referenced as corroboration of the alleged agreement. Therefore, plaintiff was not required under section 2-606 of the Code to attach any writing to the complaint.

¶ 40    Defendants next argue that because there is no writing to evidence the agreement for defendants to store the coins, plaintiff's claims are barred by the statute of frauds found in section 2-201 of the Uniform Commercial Code (810 ILCS 5/2-201 (West 2010)). Article 2 of the UCC governs the sale of goods. *Id.* However, the "transaction" alleged, the holding of the coins, constitutes a service and not the sale of goods. See 810 ILCS 5/2-105(1) (West 2010). As such, it falls outside of the purview of the statute of frauds found in article 2 of the Uniform Commercial Code, which governs only the sale of goods and not the services alleged in the complaint. See 810 ILCS 5/2-102 (West 2010). Therefore, we reject defendants' contention that plaintiff's claims are barred by the statute of frauds.

¶ 41    Defendants also argue that plaintiff's claims are barred by the statute of frauds found in the Frauds Act (Act) (740 ILCS 80/1 (West 2010)). The Act provides in pertinent part:

> "No action shall be brought *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." 740 ILCS 80/1 (West 2010).

To determine whether the Act applies to a contract, the test is "whether the contract is capable of being performed within one year of its formation, not whether such occurrence is likely."

---

[1]The statute of frauds constitutes an affirmative matter outside of the facts alleged in a complaint and should be raised in a motion to dismiss pursuant to section 2-619(a)(7) of the Code (735 ILCS 5/2-619(a)(7) (West 2010)). Therefore, the defendants improperly raised the statute of frauds in a section 2-615 motion to dismiss, which attacks the legal sufficiency of the complaint. 735 ILCS 5/2-615 (West 2010); *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). Because we do not have the benefit of transcripts or a bystander's report from the hearing on the motion, we do not know how the circuit court treated this impropriety. Nonetheless, we review a trial court's ruling on a motion to dismiss brought pursuant to section 2-615 or section 2-619 under the *de novo* standard. See *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139.

*Robinson v. BDO Seidman, LLP*, 367 Ill. App. 3d 366, 370 (2006). "If an oral agreement possibly could be performed within one year, it does not come within the Statute of Frauds." *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 892 (1995).

¶ 42    Plaintiff alleged that in June of 2008, he left the coins with defendants for safekeeping and he also alleged he could get them back at any time and in October 2008, he was unable to retrieve them upon demand. Under the time line alleged, the agreement to store the coins was capable of, and was allegedly performed in one year. Therefore, plaintiff's claims are not barred by the statute of frauds under the Act.

¶ 43    Defendants make additional arguments for dismissal of the verified complaint in their appeal brief: that Exhibit E, the alleged "receipt," is a forgery; they attack the veracity of the allegations in the complaint; and that the "receipt" is unenforceable pursuant to section 3-401 of the UCC (810 ILCS 5/3-401 (West 2010)) (employer's responsibility for fraudulent endorsement by an employee). However, these arguments were not raised in the circuit court and therefore, they will not be considered here on appeal. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); see *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 24 ("arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal").

¶ 44    Therefore, for the foregoing reasons, we find the trial court properly denied defendants' motion to dismiss the verified complaint.

¶ 45                                    CONCLUSION

¶ 46    For the reasons stated, we affirm the order of the circuit court denying defendants' motion to dismiss. We reverse the circuit court's order granting plaintiff's motion to deem facts admitted and remand this cause to the circuit court with directions to allow defendants' original responses to plaintiff's request for admission to stand, as they are compliant with the requirements of Rule 216; and we vacate the order of summary judgment in favor of plaintiff.

¶ 47    Affirmed in part and reversed in part; cause remanded.