2020 IL App (1st) 200137-U

THIRD DIVISION
December 30, 2020

No. 1-20-0137

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JEFF LARSEN, | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | 17 L 65032 |
| v. | ) | |
| | ) | Honorable |
| MAUREEN BRINGLEY, | ) | Matthew J. Carmody, |
| | ) | Judge Presiding |
| Defendant-Appellee. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Circuit court did not err by denying plaintiff's Rule 183 motion for extension of
time to file notice of rejection of an arbitration decision.

¶ 2   In June 2017, plaintiff Jeff Larsen filed this negligence lawsuit against defendant

Maureen Bringley after Larsen and Bringley were involved in an automobile accident in

Markham, Illinois. Larsen filed suit in the law division of the circuit court of Cook County,

alleging that, as a result of the accident, he had "suffered damages in excess of $100,000."

¶ 3   Discovery ensued, and it soon became clear that the actual damages would be far less

than a hundred thousand dollars. Larsen never produced medical records or bills, and the medical

evidence Bringley was able to obtain by subpoena suggested that Larsen's "medical specials"

amounted to $1,903. And at some point, Larsen submitted a wage-loss claim for $1,410.

¶ 4     As those two numbers combined for a total of $3,313, significantly below the $100,000-plus value originally claimed, and well below the $30,000 threshold for filing cases in the law division, Bringley moved to transfer the case to the municipal division for mandatory arbitration. The motion was scheduled for presentment on February 22, 2019, but Larsen's attorney failed to appear, so the motion was continued to April.

¶ 5     On April 16, Larsen's attorney appeared in court and agreed to reduce the amount of requested damages and to transfer the case. The same day, the court entered an ordering transferring the case to Fifth Municipal District for mandatory arbitration.

¶ 6     On April 25, the circuit court sent notice to the parties, informing them that an arbitration hearing had been scheduled for July 2. But on May 24, 2019, the court entered an order striking the July 2 hearing date and resetting the hearing to August 8, 2019.

¶ 7     On August 8, 2019, the mandatory arbitration hearing took place as scheduled. Inexplicably, Larsen did not appear at the hearing, though his attorney did. With the plaintiff absent, the arbitrators not surprisingly found in favor of Bringley, the defendant. The order entering the award stated that the hearing concluded at 9:30 a.m., and a notation on the order indicates that it was filed 10 minutes later, at 9:40 a.m. The order further set the judgment on award date for September 23, 2019.

¶ 8     On August 16, 2019, the court mailed Larsen's attorney a document titled "Notice of Award," stating:

> On the 8th day of August, 2019, the award of the arbitrators dated August 8th, 2019, a copy of which is attached hereto, was filed and entered of record in this Cause. A copy of this NOTICE has on this date been sent by regular mail, postage

prepaid, addressed to each of the parties appearing herein, at their last known address, or to their attorney of record."

¶ 9      Because the arbitral award was entered on August 8, 2019, Larsen had until September 7, 2019, to reject the award. See Ill. S. Ct. R. 93 (eff. Jan. 1, 1997) (establishing 30-day deadline for party to reject arbitration award). But because September 7 was a Saturday, the deadline kicked over to the following Monday, September 9, 2019. See 10 ILCS 5/1-6 (West 2018).

¶ 10      On September 11, 2019—two days after his deadline to reject the arbitration award had passed—Larsen simultaneously filed a notice of rejection of arbitration award and a motion under Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) for extension of time to file his notice of rejection. See Ill. S. Ct. R. 183 (eff. Feb. 16, 2011) (for good cause shown, court may extend time for filing any pleading, either before or after expiration of time).

¶ 11      In the Rule 183 motion, Larsen alleged that his attorney "never received an Award of Arbitrators." Larsen further stated that his lawyer "attempted to reach Defense counsel to determine if there was an award issued[,]" and that defense counsel "did not respond until after 5:00 pm on September 9, 2019 when defense counsel advised that the award was issued in favor of defendant." Larsen alleged that his attorney actually attempted to file the notice of rejection on September 10, 2019, but due to an unspecified "system error, the motion was rejected and not filed."

¶ 12      On October 7, 2019, the circuit court entered a written order denying Larsen's Rule 183 motion. The court explicitly found that Larsen "failed to show a good cause basis for [it] to grant an extension of time for filing the Notice of Rejection as required by Supreme Court Rule 183."

¶ 13      On November 6, 2019, Larsen filed a motion to reconsider. In short, Larsen maintained that his failure to file a timely notice of rejection was a mistake rather than an "intentional act of

defiance." In support of the motion, Larsen attached an affidavit from his attorney, Christopher Jahnke. In his affidavit, Jahnke stated that he never received the arbitral award. In addition, he averred that he emailed defense counsel at 2:36 p.m. on September 9, 2019—the due date—asking if they had received the award. He noted that although the online docket showed an award had been entered, the docket did not indicate in which party's favor the arbitrators had found. On December 19, 2019, the court denied Larsen's motion to reconsider.

¶ 14    On appeal, Larsen claims the circuit court erred by denying his Rule 183 motion for extension of time to reject the arbitration decision.

¶ 15    Under Rule 183, the circuit court "may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time," but only "for good cause shown." Ill. S.Ct. R. 183 (eff. Feb. 16, 2011). The rule "specifically makes good cause a prerequisite to relief" and establishes that "the burden of establishing good cause rests on the party seeking relief under Rule 183." *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007). There is no fixed definition of "good cause." The existence of good cause "is fact-dependent and rests within the sound discretion of the circuit court." *Id*.

¶ 16    We will not disturb the circuit court's disposition of a Rule 183 motion absent an abuse of discretion. *Id*. at 354. A trial court abuses its discretion in deciding a Rule 183 motion if no reasonable person would take the view adopted by the trial court. *Armagan v. Pesha*, 2014 IL App (1st) 121840, ¶ 24.

¶ 17    Here, Larsen's Rule 183 motion failed to establish, and indeed barely alleged, that he had good cause for missing the deadline to reject the arbitration award. Larsen maintained that he did not know the arbitrators had entered a decision or ruled against him until the evening of

1-20-0137

September 9, 2019. The record shows that the Notice of Award was mailed to Larsen's attorney, Mr. Jahnke. But put that to the side. Even if Jahnke never received the notice of award, he knew from reviewing the online docket that a decision had been entered that required a rejection by the date of September 9, 2019.

¶ 18     And while that docket did not indicate who prevailed at the arbitration, it is hard to imagine that Jahnke thought his client had won, when his client didn't even show up to the arbitration. This case concerned a car accident, and Jahnke's client, Larsen, was the plaintiff. It's hard to imagine winning a case on which you have the burden of proof if your client doesn't appear, and the defendant testifies under oath to her side of the story. Larsen's counsel must have had a good idea, at a minimum, that the notice of award was going to be bad news for his client. If he did not receive the award in the mail, as he claims, he waited until the last minute to inquire of defense counsel about the arbitration's outcome.

¶ 19     And even if we put *that* to the side, Larsen's counsel knew for certain, at some point after 5:00 pm on the due date, from defense counsel's email response, that his client had lost the arbitration. It was not too late to file a notice of rejection at that moment. We are no longer in the days of paper filings, when the courthouse closes at 5 pm. He could have electronically filed the notice of rejection the moment he learned of the outcome, or any other time over the next six-plus hours before the clock hit midnight and it became September 10. See Ill. S. Ct. R. 9(d) (eff. Dec. 12, 2018) ("a document is considered timely if submitted before midnight (in the court's time zone) on or before the date on which the document is due.").

¶ 20     Larsen's claim that his lawyer tried to file the notice of rejection on September 10, but a system error prevented him from doing, does not advance his position. We are sympathetic to claims that system errors, computer glitches, or general technical mishaps prevented the timely

- 5 -

filing of a pleading or other document. See, *e.g.*, *Davis v. Village of Maywood*, 2020 IL App (1st) 191011, ¶ 21. But the filing was already late on September 10. It was due September 9. The alleged system error had nothing to do with the untimeliness of the filing.

¶ 21    Nor are we persuaded by Larsen's insinuation that defense counsel's email response was late in the day—after 5 pm—as if defense counsel deliberately waited past that time to reply. It was Larsen's counsel who waited until after 2:30 pm on the due date to make his initial inquiry to defense counsel, and defense counsel responded within a reasonable amount of time on a day in which, according to his reply email, he was not even in the office. And as we have said, Larsen still had multiple hours of time, albeit in the evening, to file the notice of rejection. In any event, while we expect basic courtesies from opposing counsel in responding to questions like this (and from all we can see, defense counsel showed that courtesy here), it is not defense counsel's obligation to do plaintiff's job.

¶ 22    The trial court did not find counsel's excuses satisfactory and found that good cause did not exist to grant an extension of time to file the notice of rejection. Given what we have found above, that finding seems perfectly reasonable. We cannot say that no reasonable person would adopt the trial court's position. We thus affirm the trial court's judgment.

¶ 23    Affirmed.